[No. 55796-9. En Banc. May 11, 1989.]

*In the Matter of the Personal Restraint of*
MONTE E. ANDERSON, *Petitioner.*

*Lewis M. Schrawyer,* for petitioner.

*Kenneth O. Eikenberry, Attorney General, William L. Williams, Senior Assistant,* and *Glenn L. Harvey, Assistant,* for respondent.

PEARSON, J.—Petitioner, Monte E. Anderson, an inmate at the Washington State Penitentiary, seeks review of a disciplinary proceeding finding him guilty of the infraction of possession of a knife that was found in a cell which petitioner shared with three other prison inmates.

The issue is whether WAC 137–28–031, referred to as the "cell tag" regulation, was unconstitutionally applied to petitioner in violation of his substantive due process right to a fundamentally fair proceeding. We accepted petitioner's personal restraint petition to review the sanction imposed, *i.e.,* 10 days' isolation, 20 days' segregation, and the loss of 360 days of good time credit.[1] *In re Reismiller,* 101 Wn.2d 291, 678 P.2d 323 (1984). We affirm the disciplinary board's sanction.

---

[1]Petitioner's three cellmates, Rodolfo Molina, Albert Powers, and Scott Smith, received similar disciplinary sanctions, but their cases are not before us.

The cell tag regulation provides:

Each inmate of a multiple–inmate cell will be held accountable for an infraction that occurs within the confines of such cell unless he/she can establish a lack of involvement in the infraction.

The facts giving rise to petitioner's discipline are as follows. On November 12, 1985, a search of his cell was conducted and a knife, approximately 8 inches long and sharpened to a point, was found in a shoe under the bottom left bunk. Aside from this discovery, the record does not specifically connect petitioner to the weapon, and petitioner denied knowledge of the knife. The record discloses that the search was prompted by a complaint made by Molina, one of the occupants, to a prison sergeant a few days prior to the search. Molina complained that there were knives in the cell, and he wanted to be moved. At the hearing, Molina claimed that the knife belonged to Powers. The disciplinary board found against petitioner and the prison superintendent denied his appeal.

The effect of the cell tag regulation is to create a rebuttable presumption of involvement of an inmate where an infraction occurs in his cell. The question is whether such a presumption violates substantive due process where the disciplinary sanction is a loss of statutory good time credit. We answer in the negative.

■ Statutory right to good time credits constitutes a liberty interest which is protected by the due process clause. However, because of the prison setting, a lesser standard of evidence is required in order to satisfy due process for prison inmates. *Wolff v. McDonnell,* 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974). We have repeatedly acknowledged this general principle. *See In re Reismiller, supra; In re Young,* 95 Wn.2d 216, 622 P.2d 373 (1980). More recently, the United States Supreme Court has held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 455, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985). We adopted the

"some or any evidence" standard in *In re Reismiller, supra,* and in *In re Johnston,* 109 Wn.2d 493, 745 P.2d 864 (1987).

Petitioner argues that the evidence upon which the disciplinary board based its findings did not meet the "some or any evidence" test of due process as there was no direct evidence that he knew the knife was in his cell.

Petitioner relies principally on *In re Reismiller, supra.* However, petitioner misinterprets *In re Reismiller, supra.* The issue there was whether the marijuana cigarette used by the disciplinary committee to sanction Reismiller was the *same* cigarette found in his cell. In that case the prison disciplinary board failed to determine whether the contraband before the board was the same contraband that was actually found in Reismiller's cell. Nor did *In re Reismiller, supra,* raise the constitutionality of the cell tag regulation. The issue presented in the case at hand is clearly one of first impression.

We have previously stated that a prison disciplinary hearing is reviewable only if the hearing was so arbitrary and capricious that it denied the inmate a fundamentally fair hearing. *In re Reismiller,* 101 Wn.2d at 294. A hearing is arbitrary and capricious only if no evidence supports the action taken. Thus, a hearing is not arbitrary if *some* evidence supports the conclusion of the prison disciplinary board. *Superintendent v. Hill,* at 455 (citing *United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 71 L. Ed. 560, 47 S. Ct. 302 (1927)). In order to satisfy the "some or any evidence" test set forth in *Superintendent v. Hill,* there essentially must be some reasonable connection between the evidence and the inmate in order to support actions taken by the prison disciplinary board. In this case, we hold that such a connection does exist to satisfy the some or any evidence due process test, and that the well established doctrine of constructive possession furnishes the connection.

■ Constructive possession is defined as the ability of an individual to exercise dominion and control over the property that is alleged to be possessed. *State v. Walcott,*

72 Wn.2d 959, 968, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890 (1968). We have repeatedly held that possession may be proven by application of the doctrine of constructive possession. *State v. Gonzales,* 46 Wn. App. 388, 403, 731 P.2d 1101 (1986) (citing *State v. Callahan,* 77 Wn.2d 27, 29, 459 P.2d 400 (1969)); *State v. Chakos,* 74 Wn.2d 154, 443 P.2d 815, *cert. denied,* 393 U.S. 1090 (1968); *State v. Weiss,* 73 Wn.2d 372, 438 P.2d 610 (1968). The most common application of this theory is in the criminal law context involving constructive possession of narcotics. Its application, however, is also appropriate to the case at hand.

Here, it is undisputed that a weapon was found in the multiple–inmate cell occupied by petitioner and three other inmates. Each inmate is in common possession of the entire cell and has the ability to exercise dominion and control over the property contained in the cell. The fact that there was a knife found in the cell is *some* evidence that any one of the four cellmates, or all four of the cellmates, either possessed the knife, placed the knife in the cell or at least knew of its presence in the cell. Therefore, we hold that a sufficient connection does exist between the petitioner and the knife to satisfy the limited nature of due process available to incarcerated felons.

While such evidence may be insufficient to satisfy due process in a nonprison setting, because a lesser standard is required to satisfy the rights of prison inmates, due process in this case was satisfied. It is important to note the regulation provides that an inmate is not subject to an infraction if he or she can establish a lack of involvement. In this case, however, petitioner failed to establish a lack of involvement.

Furthermore, our review of the record indicates that strong policy reasons exist for the cell tag regulation. The Washington State penitentiary system has implemented several procedures to prevent the introduction of contraband into the prison system. Signs are posted at the entry

points stating that contraband is not to be taken into the prison; visitors are informed that it is illegal to bring contraband into the prison; every visitor passes through a metal detector prior to entering into the prison; and random searches are conducted of inmate work and living areas. Nevertheless, contraband still exists within the prison. The fact that inmates have access to contraband creates not only a dangerous working environment for the prison officials but also threatens the safety of prison inmates. The cell tag regulation is a response, and some experts conclude the only effective response, to this serious problem.

The expert testimony emphasized that it is the group pressure created by the regulation that will most likely keep contraband out of the multiple–inmate cell. If all occupants are held accountable, the nonowners will pressure the owners to rid the cell of the contraband or preclude its introduction in the first place. Without the regulation, multiple–inmate cells would become safe depositories for contraband, with individual culpability nearly impossible to prove. This would result in a substantial increase in the availability of contraband. The safety of the prison guards and prison inmates requires the existence of a cell tag regulation.

■ We recognize that it may be difficult for an inmate to establish his lack of involvement with contraband found in his cell, unless he reports the matter to prison authorities. Nevertheless, this difficulty and the inmate's limited liberty interest at stake must be balanced against the compelling interest of the State in maintaining a safe prison for all concerned. *United States v. Salerno,* 481 U.S. 739, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987).

Here, the record compels a conclusion that the penological interest in decreasing the number of assaults and in decreasing drug trafficking within the prison outweighs the petitioner's limited liberty interest in good time credits.

We dismiss petitioner's petition and affirm the sanction of the disciplinary board.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.