# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  49525-2-II |
| MARK J. GOSSETT, | PUBLISHED OPINION |
| Petitioner. | |

BJORGEN, J.P.T.[*] — A jury convicted Mark Jonathan Gossett of second degree rape of a child and second degree child molestation.  Initially, the superior court's judgment and sentence prohibited Gossett from having contact with any minor, including his own children.  Two months later, though, the superior court entered an agreed order amending and clarifying the judgment and sentence to allow Gossett supervised visitation with his children in the normal course of the visitation process followed by the Department of Corrections (DOC).

Gossett's wife subsequently submitted visitation applications to DOC on behalf of their children.  DOC denied the minor children's applications, among other reasons, because the individual or class of individuals has or have been victimized by the offender.  Gossett filed an administrative appeal, but DOC upheld the denial of visitation privileges between Gossett and minors, including his minor aged children.

---

[*] Judge Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

2

In this personal restraint petition (PRP), Gossett asks us to review DOC's denial of his request for visitation with his minor children. The parties present the following issues on appeal: (1) whether Gossett has a protected liberty interest in visitation with his children under the United States Constitution or the Washington Constitution, (2) whether RAP 16.4(c)(6) precludes us from reviewing Gossett's PRP because DOC argues its policies are not "laws of the State of Washington," (3) whether the superior court's order amending and clarifying Gossett's judgment and sentence did not bind DOC as a matter of law, because the superior court did not have personal jurisdiction over DOC, (4) whether DOC policies addressing visitation and prohibited contact violated a protected liberty interest in Gossett to visit his children, (5) whether DOC's prohibition on visitation between Gossett and his children was arbitrary and capricious, (6) whether Gossett's argument regarding the freedom of speech and the freedom of association warrants consideration, and (7) whether Gossett's claims about visitation with his adult children are moot and, even if not moot, whether dismissal of these claims would be appropriate pursuant to RAP 16.4(d).

Holding against Gossett on the controlling issues, we deny his PRP.

FACTS

A.      Gossett's Judgment and Sentence

A jury convicted Gossett of two counts of second degree rape of a child under RCW 9A.44.076 and two counts of second degree child molestation under RCW 9A.44.086. On June 10, 2010, the superior court sentenced him to a 245-month term of total confinement in the custody of DOC. The judgment and sentence specified that Gossett shall have no contact with his child, A.R.G.,[1] for life, not reside within a community protection zone, and participate in

---

[1] *See* General Orders of Division II, 2011-1 *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases*.

certified sexual deviancy treatment. The judgment and sentence incorporated by reference all conditions contained in its Appendix H. In addition, it specified that Gossett "shall have no contact with any minor, including his own adopted or biological children." Clerk's Papers (CP) at 7 (emphasis omitted).

Gossett's wife applied for visitation for their children, but DOC denied visitation because of the restrictions specified on Gossett's judgment and sentence. Gossett then requested an amendment and clarification of his judgment and sentence to allow visitation with his children. The superior court granted his request and, on August 4, 2010, entered an order amending and clarifying his judgment and sentence with the following provisions:

> MARK GOSSETT is allowed to have visitation with his children, as supervised by the [DOC], during normal visitation in accordance with the rules and regulations of the [DOC]; that the Court having reviewed the files and records contained herein and being otherwise fully advised in the premises, now, therefore, it is hereby
>
> ORDERED that the Judgment and Sentence entered by the above entitled Court on June 10, 2010 be and the same hereby is modified and clarified to allow for the Defendant to have visitation with his children at any [DOC] facility in which the Defendant is housed;
>
> That the children will not have visitation alone with the Defendant and such visitation shall be supervised by [DOC]'s personnel in the normal course of the visitation process followed by the [DOC]'s facility the Defendant is in;
>
> That the normal supervision of visitation by two or more correctional officers in an open room where numerous other inmates may be exercising visitation privileges, is sufficient supervision for the Defendant to have visitation with his children.

CP at 25-26.

At the present time, four of Gossett's five children are legally adults. Gossett has one minor son, C., who was not the victim.[2]

---

[2] The victim is now an adult.

B.     DOC Policies and Directives[3]

1. DOC Policy 450.300[4]

Former DOC Policy 450.300[5] governs visits for prison offenders. It outlines three

policies as follows:

I.      The Department will support offenders in maintaining ties with family, friends, and the community by allowing and setting reasonable criteria for personal visits.

II.     The Department recognizes the need to engage community stakeholders, partners, and offender families in the re-entry initiative.

III.    For the purposes of this policy, immediate family will be defined as spouse/state registered domestic partner, parent, stepparent, sibling, stepbrother, stepsister, half brother, half sister, child stepchild, grandparent, grandchild, and as documented in the offender's central file, person(s) acting in place of a parent and/or foster children.

Suppl. Br. of Resp't, Att. A, Policy, at 2.

Former DOC directive 450.300(VII)(A)(1)-(4) specifies that the following individuals

may not visit prison offenders:

1.      Minor aged victims of the offender, unless they have written approval from the Children's Administration and/or sentencing court, the Superintendent, and the Deputy Director/designee.

. . . .

3.      Persons restricted per the Judgment and Sentence. While supervised visits may be allowed per the Judgment and Sentence, supervision by facility visiting staff does not constitute supervised visitation.

---

[3] Both parties cite the policies in place in 2010 when DOC initially denied visitation between Gossett and his minor children. The policies at issue have been revised since 2010, but because the parties argued from the former versions and the subsequent amendments do not affect the resolution of the due process challenge, our analysis focuses mainly on the former versions.

[4] We refer to policies 450.300 and 450.050 as a whole as "policies." We refer to specific requirements they contain as "directives."

[5] Revised February 1, 2010.

4. Persons prohibited from visiting per DOC 450.050 Prohibited Contact, who will be informed of denial/termination of visiting privileges on DOC 21-760 Prohibited Contact Notice.

Suppl. Br. of Resp't, Att. A, Policy, at 8.

2. DOC Policy 450.050

Former DOC Policy 450.050 governs prohibited contact. It provides that "[c]onsistent with legitimate penological objectives and public safety, the Department will restrict incarcerated offender contact in any form (i.e., visits, correspondence, telephone) with specific individuals or classes of individuals." Suppl. Br. of Resp't, Att. E, Policy, at 2.

More specifically, former directive 450.050(I)(A)(1), provides:

An offender's contact with specific individuals or classes of individuals will be restricted or prohibited when:

His/her Judgment and Sentence prohibits contact with the individual or class of individuals during incarceration or upon release.

Suppl. Br. of Resp't, Att. E, Policy, at 2. In addition, former directive 450.050(I)(B)(4) provides:

An offender's contact with specific individuals or classes of individuals may be denied or restricted for reasons including, but not limited to:

. . . . The individual or class of individuals has been victimized by the offender.

Supp. Br. of Resp't, Att. E, Policy, at 2.

Former directive 450.050(I)(C) provides:

An offender may be prohibited from contact with his/her own children only if the offender's Judgment and Sentence and/or a No Contact Order prohibits such contact, or if necessary to protect the children from any specific and documented threat of harm. Documentation includes, but is not limited to:

1. The written opinions of mental health professionals or Child Protective Services, and

2. Specific verified incidents of harm to the children resulting from contact with the offender while s/he was incarcerated in a Department facility.

6

Suppl. Br. of Resp't, Att. E, Policy, at 3.

C.     DOC's Denial of Gossett's Visitation with His Minor Children

The superintendent at Stafford Creek Correctional Center received an e-mail from Linda Gossett, Gossett's wife, concerning the denial of visitation between Gossett and his minor children. The matter was referred for review to the Facility Risk Management Team (FRMT) assigned to Gossett.

The FRMT recommended that Gossett be prohibited contact with his "adopted/biological children." Suppl. Br. of Resp't, App. 2, Decl. of Rohrer, at 5. The FRMT stated that allowing contact would be counter to sound correctional practices or legitimate penological objectives. The FRMT commented that

> [p]er the Presentence Report, Offender Gossett blames the victim (which is also one of his children) and that he is not amenable to treatment. He has a 245 month to LIFE CCB [Community Custody Board] sentence. His first CCB hearing will not [be] heard until 9/8/27.

Suppl. Br. of Resp't, Att. D, Decl. of Rohrer, at 5. In another comment FRMT noted, "His Judgment and Sentence has been amended to allow supervised visits, however supervision by the facility visiting staff does not constitute as supervised visitation." *Id*.

Rohrer upheld the FRMT's recommendation and prohibited contact between Gossett and minors, including his minor aged children. Rohrer stated that the

> [v]ictim of Offender Gossett's current conviction is the minor aged adopted daughter of the offender. Previous criminal history also shows that offender Gossett was original[ly] charged with an Assault 3rd of a child which was later pled down to an Assault 4th DV [(Domestic Violence)]. PSI [(Presentence Investigation)] notes that the victim of this crime was Gossett's 10 year old foster son.
>
> Offender has displayed a history of victimizing both sexually and physically minor aged children, both male and female. Original J/S [Judgment and Sentence] noted Defendant shall have no contact with any minor, including his own adopted or biological children. J/S modified months later to read that the offender may have contact with his children as supervised by the DOC personnel in the normal course

of the visitation process followed by the DOC facility that the offender is located in and that the normal supervision of visitation by two or more C/O [(Corrections Officers)] in an open room is sufficient. However, DOC Policy 450.300 VII. Who May Not Visit: A. 3. Persons rest[ricted] per the Judgment and Se[n]tence. While supervised visits may be allowed per the J/S, supervision by facility visiting staff does not constitute supervised visitation.

Suppl. Br. of Resp't, Att. D, Decl. of Rohrer, at 2.

On October 26, 2011, Gossett appealed Rohrer's decision prohibiting contact to the assistant secretary of prisons. In this appeal, DOC staff recommended continuing the prohibition of contact and stated in part:

The case has been vetted with the SOTP [Sex Offender Treatment Program] Manager, Sally Neiland. She says: "I have reviewed the attachments as well as the J&S [Judgment and Sentence], Prohibitive Contact and PSI [Presentence Investigation]. This is a complicated case. I have a long list of concerns which include two items in the J&S. To date, Mr. Gossett has not fulfilled 1) Obtain a sex offender evaluation. . . . 12) Do not enter into a relationship with any person who has minors in their care or custody without approval of your assigned CCO [Community Corrections Officer] or SOTP (this includes his wife). This alone backs up the current Prohibitive Contact.["]

Of concern is that Mr. Gossett['s] . . . file material I have had access to indicates that he continues to deny his sexual offending and refer to the victim as a "liar and a bad Christian." In addition, even though his ERD [estimated release date] is very far out, he has not acknowledged his behavior nor has he made attempt to apply for SOTP.

In addition to that Mr. Gossett not only has 2 ROC [rape of a child] 2 convictions and 2 Child Moles 2 convictions as well as a DV [domestic violence] 4 conviction. In addition file material indicates that his wife "beat the victim with a belt and spoon." I do not believe that DOC visitation staff should hold the responsibility for supervision of these minor children given the circumstances, and the attention they must pay to a full visiting room. The liability for the children, the visiting staff and the DOC seems to outweigh the visit request.

A suggestion would be to allow for written correspondence to be reviewed both outgoing and incoming so he can maintain safe and observable contact with the children.

Suppl. Br. of Resp't, App. 2, Regular Visiting Appeal Tracking Sheet, at 11. The deputy director concurred with Rohrer's decision to prohibit contact between Gossett and minors, including his minor aged children.

On October 28, DOC sent a letter to Gossett informing him of its decision to continue the prohibited contact between him and his children. Dan Pacholke, the director of the Prisons Division, explained in the letter:

> Thank you for your letter requesting visiting privileges being authorized for your children.
>
> In your letter, you point out that there was a modification to the original Judgment and Sentence that allows you to participate in visiting with your children. The modification does not mandate visitation. Due to your conviction history and nature of the crime, I am upholding the denial of visiting privileges with your children. If you choose to submit to a sexual deviancy evaluation and participate in Sex Offender Treatment Program during your incarceration, this issue may be reconsidered. Unless this provision is met, all of your appeal opportunities have been exhausted.

Suppl. Br. of Resp't, App. 2, Pacholke Letter.

Gossett then filed this PRP.

## ANALYSIS

### DOC POLICIES AND DIRECTIVES

A.      Standard of Review and Legal Principles

For Gossett to prevail in his PRP alleging constitutional error, he must first show that he is under restraint and the restraint is unlawful under the provisions of RAP 16.4(c). *In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 391, 20 P.3d 907 (2001).

> A petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

RAP 16.4(b). Gossett has been confined through incarceration. Therefore, he is under restraint.

*Kozol v. Dep't of Corr.*, 185 Wn.2d 405, 409, 379 P.3d 72 (2016), *as corrected* (Aug. 1, 2016); *see Dyer*, 143 Wn.2d at 391.

In his petition, Gossett claims that DOC violated his constitutional right to due process when it prohibited him from visitation with his minor children. Generally, a petitioner seeking collateral review of a claimed constitutional error must establish that the error resulted in actual and substantial prejudice. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). However, where a petitioner has not had the opportunity to seek direct judicial review of a claimed error, we do not apply the usual heightened threshold requirements that ordinarily applies to our review of a PRP. *Id*. at 299. Rather, the petitioner must show only that he or she is under unlawful restraint under RAP 16.4(b) and RAP 16.4(c). *Id*.

Because Gossett challenges "[t]he conditions or manner of the restraint," he must show that DOC's denial of visitation with his minor children violates "the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(6); *see also Dyer*, 143 Wn.2d at 391-92. We review questions of law, including constitutional ones, de novo. *State v. Murray*, 190 Wn.2d 727, 732, 416 P.3d 1225 (2018); *State v. Morales*, 173 Wn.2d 560, 567, 269 P.3d 263 (2012).

B.     RAP 16.4(c)(6) Does Not Preclude Review of Gossett's PRP

As a threshold matter, the State argues that the policies DOC relied on to prohibit Gossett from visitation with his minor children are not "laws of the State of Washington" and, therefore, we cannot grant Gossett his requested relief under RAP 16.4(c)(6).[6] Br. of Resp't at 19-21. We disagree.

---

[6] The State also maintains DOC has not violated the federal or state constitution for the purposes of RAP 16.4(c)(6), thus precluding Gossett's PRP.

Even if the DOC policies at issue would not constitute the "laws of the State of Washington" for the purposes of RAP 16.4(c)(6), Gossett also contends that he has a constitutionally protected liberty interest in visitation with his children. Relief could be granted under RAP 16.4(c)(6) on that basis. Thus, we reject DOC's argument that we cannot grant Gossett his requested relief generally under RAP 16.4(c)(6).

C.  The Due Process Clause Itself Does Not Create a Protected Liberty Interest in Visitation with Minor Children

The State argues that the due process clause itself does not create a protected liberty interest in prison visitation between Gossett and his children. We agree.

Due process protects against the deprivation of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. "Protected liberty interests 'may arise from two sources-the Due Process Clause itself and the laws of the States.'" *Dyer*, 143 Wn.2d at 392 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)). "The due process clause of the federal constitution does not, of its own force, create a liberty interest . . . for it is well settled that an inmate does not have a liberty interest in the denial of contact visits by a spouse, relatives, children, and friends." *Dyer*, 143 Wn.2d at 392. "The denial of a prisoner's access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.'" *Id*. (quoting *Thompson*, 490 U.S. at 461).

Neither party addressed whether Washington's Constitution provides greater protection than its federal counterpart. In *Dyer*, our Supreme Court stated, "Absent such an argument, 'this Court will interpret the Washington constitution coextensively with its parallel federal counterpart.'" 143 Wn.2d at 394 (quoting *State v. Lee*, 135 Wn.2d 369, 387, 957 P.2d 741 (1998)). We thus presume a coextensive provision. *See Dyer*, 143 Wn.2d at 393-94.

11

For these reasons, we hold that the due process clause of the federal constitution itself does not create a protected liberty interest in visitation between Gossett and his children. *See Dyer*, 143 Wn.2d at 392. Because we presume a coextensive provision, we hold the due process clause of the Washington Constitution, article I, section 3, also does not create a protected liberty interest in visitation between Gossett and his children.

D.     The Superior Court's Order Amending and Clarifying Gossett's Judgment and Sentence is not Binding on DOC

The State argues that DOC did not violate the superior court's order because the superior court did not have personal jurisdiction to order DOC to provide supervised visitation. We agree.

The State cites *Department of Social & Health Services v. Zamora*, 198 Wn. App. 44, 72-73, 392 P.3d 1124, *review denied*, 189 Wn.2d 1004 (2017), which provides, in pertinent part, as follows:

> Where, as here, the facts relevant to jurisdiction are undisputed, we review a trial court's assertion of personal jurisdiction de novo. We review a challenge to the authority of the court de novo.
>
> A court does not have personal jurisdiction over a party if the individual or entity is not designated as a party and has not been made a party by service of process. If a court lacks personal jurisdiction over a party, any order entered against that party is void. Because the undisputed record establishes DOC was not designated as a party and was not made a party by service of process, the court did not have jurisdiction to impose conditions on DOC.

(Internal citations omitted.)

In this case, the superior court's order amending and clarifying judgment identifies the parties that appeared and agreed to the clarification to impose supervised visitation duties on DOC. Those parties were Gossett, appearing through his attorney, and the State, appearing through the Thurston County prosecuting attorney. The order does not indicate that DOC was represented at the hearing. Because the record does not show that DOC was designated a party

or made a party by service of process, we conclude that the superior court did not have personal jurisdiction to impose conditions related to supervised visitation on DOC. *See Zamora*, 198 Wn. App. at 73.

Of course, directions to DOC to accept and hold a prisoner are an inherent part of any sentence of imprisonment, and DOC need not for that reason be made a party for all such sentencings. In this case, however, the sentencing had already occurred, Gossett had already been remanded to the custody of DOC, and the order amending and clarifying his sentence pertained to the routine management of one of its prisoners. This distinguishes this situation from a typical sentencing after conviction.

We hold that in this case the superior court lacked personal jurisdiction over DOC related to the issue of supervised visitation while in a DOC facility. Therefore, the provisions in the order entered against DOC relating to visitation are not binding on DOC as a matter of law. *See id*.

E.     Assuming Without Deciding That DOC Policies Addressing Visitation and Prohibited Contact Create a Protected Liberty Interest in Gossett's Requested Visitation, DOC Did Not Violate Them

Gossett argues that DOC Policies 450.300 and 450.050 created a due process liberty interest in visitation with his minor children. He argues that DOC's prohibition on visitation between Gossett and his children was arbitrary and capricious, violated these policies, and therefore deprived him of his due process interest in liberty. Even assuming that these policies created a liberty interest, which we do not decide, DOC did not violate them or act arbitrarily and capriciously in applying them. Therefore, we disagree with Gossett's arguments.

1. DOC's Prohibition on Visitation Between Gossett and His Children
   Did Not Violate DOC Policies

As set out above, former DOC directive 450.300(VII)(A)(1)-(4) lists categories of individuals who may not visit prison offenders. One of those categories, subsection (A)(4), states, "Persons prohibited from visiting per DOC 450.050 Prohibited Contact." Reply Br. of Resp't, Att. A, at 8. Therefore, we focus our examination on DOC Policy 450.050.

Former DOC Policy 450.050 sets out specific instances in which contact with an inmate is prohibited. First, former directive 450.050(I)(B)(4) provided, "An offender's contact with specific individuals or classes of individuals may be denied or restricted for reasons including, but not limited to: . . . . The individual or class of individuals has been victimized by the offender." Supp. Br. of Resp't, Att. E, Policy, at 2. DOC reasoned that because Gossett victimized his children, they belong to a class of individuals that have been victimized by Gossett, so this directive provides it the authority to prohibit contact.

The Department is correct. Gossett's victim was one of his minor children and DOC's ban on visitation extends only to minors, including his remaining minor aged child. DOC's action was consistent with former directive 450.050(I)(B)(4).

Next, former DOC directive 450.050(I)(C) provided:

An offender may be prohibited from contact with his/her own child(ren) *only if* the offender's Judgment and Sentence and/or a No Contact Order prohibits contact, or if necessary to protect the child(ren) from any specific and documented threat of harm. Documentation *includes, but is not limited to*:

1. A written opinions of mental health professionals or Child Protective Services, and

2. Specific verified incidents of harm to the child(ren) resulting from contact with the offender while s/he was incarcerated in a Department facility.

Br. of Resp't, Att. E, Policy, at 3 (emphasis added).

14

Gossett points out that neither his judgment and sentence nor any no-contact order prohibits his contact with his children. He argues that there is no documentation indicating he poses a threat of harm to his children and that DOC cannot point to any written opinion of a mental health professional or any "verified incident of harm to the children resulting from contact with [Mr. Gossett] while [he] was incarcerated." Suppl. Br. of Pet'r at 9-10. Therefore, Gossett argues, DOC has pointed to neither form of documentation required and has violated its own policies.

Pointing to the language "includes, but is not limited to," the State argues that "while specific verified incidents of harm to the children resulting from contact with the offender while s/he was incarcerated in a Department facility is *sufficient* documentation, it is not *necessary* documentation." Suppl. Br. of Resp't at 27.

Relevant to former directive 450.050(I)(C) is the declaration of Belinda Stewart, the correction's program administrator for DOC, who declares,

> While a documented history of harm to the children resulting from contact with the offender while she or he was incarcerated in a Department facility is one form of documentation that supports prohibited contact, it is not the only form of documentation that can be used for that purpose. In this case, Mr. Gossett's documented pre-incarceration abuse of both male and female minors and the provisions of his Judgment and Sentence support the Department's decision to prohibit contact between Mr. Gossett and "C" while "C" is still a minor. Prohibiting Mr. Gossett from visiting "C" until "C" becomes an adult is, therefore, both appropriate and consistent with Department policy.

Suppl. Br. of Resp't, App. 3, Decl. of Belinda Stewart, at 27.

The State also points us to the declaration of Rohrer, who declares,

> It is common in prison for inmates with convictions for child rape, child molestation, or domestic violence against children to be restricted from visiting minor children, including their own children. This is particularly true where, as here, the inmate has victimized his own adopted children. This is not done for arbitrary reasons but rather because of the legitimate fear on the part of Department staff and society at large that permitting such visitation risks further victimization of children. Any individual committing these offenses in Washington can expect

15

that he or she will likely be restricted from visiting minor children, including his own children, as an ordinary incident of prison life.

Supp. Br. of Resp't, App. 2, Decl. of Rohrer, at 11. Rohrer's view is affirmed by the declaration of Stewart, who declares,

Prohibiting inmates convicted of crimes against children from visiting with minor children—even their own children—is not at all unusual in Department facilities. It is, in fact, a typical part of the incarcerated experience of inmates convicted of such crimes.

Suppl. Br. of Resp't, App. 3, Decl. of Belinda Stewart, at 8.

We agree with DOC. Former directive 450.050(I)(C) does not require documentation of specific verified incidents of harm to the children resulting from contact with the offender while incarcerated. Instead, it requires that the prohibition of contact be "necessary to protect the child(ren) from any specific and *documented threat of harm*." *Id.* (emphasis added). Further, inclusion of the phrase "*but is not limited to*" makes clear that the specified types of documentation are not intended as exclusive. The record supports that Gossett was convicted of sex crimes against his own minor child, failed to obtain deviancy treatment as required by the judgment and sentence, continues to deny sexual offending, and refers to the victim as a "liar and a bad Christian." Suppl. Br. of Resp't, App. 2, Decl. of Rohrer, at 9. This evidence provides a sound basis for DOC's prohibition of visitation with his minor child, consistently with former DOC Policy 450.050(I)(C).

For these reasons, we hold that DOC acted consistently with former policies 450.300 and 450.050.

2. DOC's Prohibition on Visitation Between Gossett and His Children Was Not Arbitrary and Capricious

Both parties argue the arbitrary and capricious standard of review applies. In support, DOC cites *Dyer*, 143 Wn.2d at 391, for the rule that the arbitrary and capricious standard applies

16

to all administrative decision-making in prison. *Dyer*, however, did not announce such a broad rule. Instead, it held that "[c]ourts review *prison disciplinary proceedings* to determine 'whether the action taken was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding.'" 143 Wn.2d at 391 (emphasis added) (quoting *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984)). The *Dyer* court proceeded to review the denial of visitation under the arbitrary and capricious standard, apparently deeming that action in Dyer's case to be disciplinary in nature. 143 Wn.2d at 391-92. Gossett's case does not involve a prison disciplinary proceeding. However, because each party proposes use of the arbitrary and capricious standard and because we would reach the same result under either de novo, abuse of discretion, or arbitrary and capricious review, we assume without deciding that the arbitrary and capricious standard applies.

Gossett argues that DOC's denial of visitation with his minor child is arbitrary and capricious because DOC did not follow its own policies, directives, criteria, and/or guidelines. We disagree.

"'A hearing is arbitrary and capricious only if no evidence supports the action taken.'" *Dyer*, 143 Wn.2d at 392 (quoting *In re Pers. Restraint of Anderson*, 112 Wn.2d 546, 549, 772 P.2d 510 (1989)). "'Thus, a hearing is not arbitrary if *some* evidence supports the conclusions of the . . . [DOC decision-maker].'" *Id.* (quoting *Anderson*, 112 Wn.2d at 549).

According to the declaration of Rohrer,

the denial to allow Mr. Gossett visits from [m]inor aged children was made after review of a Pre-Sentence Investigation, Police Reports, and a review of both the original and amended Judgment and Sentence. The decision took into consideration Mr. Gossett's Rape of a Child and Child Molestation convictions as well as a previous conviction for Assault IV, Domestic Violence against a minor aged child. Both the sexual offenses and the assault offense involved minor aged children who were in the care of Mr. and Ms. Gossett. Further, the police reports and the pre-sentencing investigation indicated that the victim of the Rape of Child offenses had indicated that Ms. Gossett had abused her physically. Staff who

17

supervise the visiting room do not have the ability to provide direct observation of the family during the entire visitation period which can place the minor children at risk for further victimization.

Suppl. Br. of Resp't, App. 2, Decl. of Rohrer, at 10-11. Gossett also had not complied with the superior court's condition requiring him to obtain a sex offender evaluation or enter a sex offender treatment program.

On appeal, DOC concluded,

Due to your conviction history and nature of the crime, I am upholding the denial of visiting privileges with your children. If you choose to submit to a sexual deviancy evaluation and participate in Sex Offender Treatment Program during your incarceration, this issue may be reconsidered.

Br. of Resp't, App. 2, Pacholke Letter.

DOC's actions were not arbitrary and capricious. They were supported by a documented history of child abuse, criminal convictions showing a pattern of abuse toward minors, and Gossett's failure to enroll in sex offender evaluation and treatment programs. *See Dyer*, 143 Wn.2d at 392. Policy directive 450.050(I)(C) allowed DOC to prohibit Gossett from contact with his own children if necessary to protect the children from any specific and documented threat of harm. The discussion above shows that DOC acted consistently with that and other relevant directives.

In sum, we hold that DOC did not violate its policies or act arbitrarily and capriciously when it denied Gossett visitation with his minor children. Therefore, assuming without deciding that the DOC policies created a due process liberty interest in Gossett, DOC did not deprive him of that interest.

F.      First Amendment

Gossett makes a fleeting argument regarding the freedom of speech and the freedom of association in his original pro se PRP.

18

Gossett argues,

> The prohibition preventing him from receiving visits from his children is one of the 'conditions' of his incarceration, which implicates his First Amendment rights to free speech and freedom of association, and his due process rights under the Fifth and Fourteenth Amendments. [In *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972), the United States Supreme Court recognized a parent's fundamental right to the companionship and society of his or her children through the due process clause of the Fourteenth Amendment.]

Br. of Pet'r at 8.

Conclusory allegations of constitutional violations are insufficient to support a PRP. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). Deprived of rational argument in support of the issues presented for review, we decline to address Gossett's First Amendment claims. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

G.      Gossett Concedes DOC Resolved Issues Pertaining to Visitation with His Adult Children

At oral argument, Gossett conceded DOC resolved any existing issues pertaining to visitation with his adult children. Therefore, we do not address whether those issues raised in his PRP were moot or if dismissal of these claims would be appropriate pursuant to RAP 16.4(d).

CONCLUSION

We hold as follows:

1. RAP 16.4(c)(6) does not preclude us from reviewing Gossett's PRP;

2. The due process clause itself does not create a protected liberty interest in Gossett's requested visitation;

3. The superior court's order entered against DOC relating to visitation was not binding on DOC as a matter of law, because the superior court did not have personal jurisdiction over DOC;

4. In its prohibition of visitation between Gossett and his minor child, DOC did not violate policies 450.300 or 450.050 or act arbitrarily and capriciously in applying them. Therefore, assuming those policies created a due process liberty interest in visitation with Gossett's children, DOC did not deprive Gossett of that interest;

19

5.  We decline to address Gossett's First Amendment claims; and

6.  Because Gossett conceded at oral argument that DOC resolved the issues related to visitation with his adult children, we do not address whether those issues raised in his PRP were moot or if dismissal of these claims would be appropriate pursuant to RAP 16.4(d).

Therefore, we deny Gossett's PRP.

Bjorgen, J.P.T.

We concur:

Maxa, C.J.

Lee, J.