IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 78156-1-I |
| | ) | |
| | ) | |
| JOSEPH JW ROBERTS, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

BOWMAN, J. — Joseph JW Roberts, Jr. incurred multiple serious infractions while incarcerated, resulting in loss of good-time credits during his stay with the Department of Corrections (DOC). He filed this personal restraint petition (PRP) to challenge these disciplinary proceedings. We conclude that three disciplinary actions were arbitrary and capricious. For these three infractions, Roberts' loss of good-time credits amounts to an unlawful restraint for which we grant relief.

PRP Standard of Review

Roberts filed this PRP while incarcerated at Monroe Correctional Complex. Between February 2017 and March 2018, Roberts received multiple serious infractions that resulted in penalties, including loss of credit for time served for good conduct. Roberts alleges unlawful restraint based on the loss of his good-time credits from due process errors in his disciplinary hearings. We address the facts of each infraction in turn.

Citations and pin cites are based on the Westlaw online version of the cited material.

To obtain relief through a PRP, the petitioner must show that he is currently under restraint and that the restraint is unlawful. In re Pers. Restraint of Malik, 152 Wn. App. 213, 218, 215 P.3d 209 (2009). "[A] DOC decision that wrongfully denies an inmate good-time credits results in an unlawful restraint of the inmate and can be challenged in a PRP if the inmate has had no other means of obtaining judicial review of the decision." In re Pers. Restraint of Reifschneider, 130 Wn. App. 498, 501, 123 P.3d 496 (2005). Inmates must present facts or evidence beyond conclusory allegations, speculation, conjecture, or inadmissible hearsay. In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999).

Serious infraction hearings, where sanctions include loss of good-time credits, require minimum due process. Gronquist, 138 Wn.2d at 397. In these cases, minimum due process means a prisoner must

> (1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action.

Gronquist, 138 Wn.2d at 396-97. Washington regulations require that an offender receive written notice of the alleged violations and a summary of supporting evidence at least 24 hours before a hearing. WAC 137-28-285(1)(b). An offender also has the right to be present or waive presence at the hearing. WAC 137-28-285(1)(c); see also WAC 137-28-300(2).

We review prison disciplinary proceedings to determine whether the action was "so arbitrary and capricious as to deny the petitioner a fundamentally fair

proceeding." In re Pers. Restraint Petition of Reismiller, 101 Wn.2d 291, 294,

678 P.2d 323 (1984).

> Action is so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding if the petitioner is not afforded the minimum due process protections applicable in prison disciplinary hearings or if the decision is not supported by at least some evidence.

In re Pers. Restraint Petition of Krier, 108 Wn. App. 31, 38, 29 P.3d 720 (2001).

"Some evidence" requires a reasonable connection between the evidence and

the inmate to support the action taken by the prison disciplinary board. In re

Pers. Restraint Petition of Anderson, 112 Wn.2d 546, 548-49, 772 P.2d 510

(1989).

Infraction Group 1[1]

On February 14, 2017, a corrections officer (CO) asked Roberts to show

his knuckles in order to take video evidence of possible injuries sustained during

an altercation.  Roberts refused and held his hands against his back to prevent

the CO from accessing his knuckles.  After refusing another request to display

his knuckles, Roberts received a serious infraction under WAC 137-25-030(556)

for "[r]efusing to submit to or cooperate in a search when ordered to do so by a

staff member."

During the disciplinary hearing, the hearing officer (HO) had Roberts

escorted out of the hearing room due to his "disruptive non-cooperative

---

[1] This opinion refers to the infractions by the "Infraction Group" number assigned by DOC and found near the top left corner of the documents supporting the infraction.

behavior." The HO found Roberts guilty of the rule 556[2] infraction based on the written testimony from staff. The HO sanctioned Roberts with 18 days of segregation and a 30-day loss of good-conduct time. Roberts appealed the infraction to the prison superintendent, who affirmed the ruling.

Roberts claims he was denied the opportunity to attend the hearing and present evidence. We disagree. Roberts received notice of the hearing more than 24 hours in advance.[3] He also had the opportunity to present evidence on his behalf. The HO continued the original hearing date approximately one week so that Roberts could obtain and submit two witness statements. Ultimately, the HO removed Roberts from the hearing. "If an offender's behavior disrupts the hearing, he/she may be removed and the hearing will continue on the record in the offender's absence." WAC 137-28-300(5). The record shows Roberts interrupted the HO several times and spoke in a very loud voice. The HO asked Roberts to quiet down and stop interrupting but Roberts did not comply. Evidence supports the HO's determination that Roberts' behavior was "disruptive" and "non-cooperative."

Roberts also contends DOC did not present sufficient evidence that he refused a search. He argues that the CO asked to see his hands but did not articulate to him that it was a "search." However, the CO made the request in an effort to document evidence of Roberts' alleged participation in a physical

---

[2] WAC 137-25-030 provides a list of serious violations. This opinion will refer to infractions by their WAC subsection. For example, violation of WAC 137-25-030(556) is a "rule 556" infraction.

[3] Roberts received notice on February 15, 2017 of the hearing scheduled for February 22, 2017.

altercation. In that context, the nature of the request was clear. Evidence produced at the hearing included written testimony from two COs and video footage of Roberts refusing to cooperate with examination of his knuckles. "Some evidence" supports the HO's conclusion that Roberts refused to cooperate with a search. See In re Pers. Restraint of Grantham, 168 Wn.2d 204, 215-16, 227 P.3d 285 (2010).

Finally, Roberts claims the HO demonstrated racial bias against him. He provides no evidence to support his assertion. This conclusory allegation cannot support a successful petition. See Gronquist, 138 Wn.2d at 396.

Infraction Group 3

On February 22, 2017, Roberts received a rule 600 infraction for "[t]ampering with, damaging, blocking, or interfering with any locking, monitoring, or security device."[4] Roberts pressed the emergency button in his cell and notified the CO that he wanted to file a "Prison Rape Elimination Act" (PREA) claim. The CO informed Roberts that the button was for medical emergencies only. The CO discovered that another CO warned Roberts about misuse of the emergency button a few days before. Because of the multiple warnings, the CO issued the rule 600 infraction.

The disciplinary hearing for the rule 600 infraction occurred immediately after the hearing for Infraction Group 1 and an officer had already escorted Roberts out of the room. The HO stated on the record that he asked Roberts if he would cooperate for the second hearing. Roberts yelled and refused to listen

---

[4] WAC 137-25-030(600).

to the question, so the HO conducted the hearing in Robert's absence.  The HO determined that Roberts committed the infraction.  Roberts received a 10-day loss of good-conduct time sanction.  Roberts appealed and an associate superintendent affirmed the decision.

Roberts argues the HO improperly conducted the disciplinary hearing without him present.  As noted above, an offender has the right to be present at all stages of the hearing, but the HO may remove the offender from the hearing for disruptive behavior.  WAC 137-28-300(2), (5).  At the beginning of the hearing for Infraction Group 3, the HO noted that officers had escorted Roberts out of the first hearing.  Roberts reacted to the HO's inquiry as to whether he would cooperate in the second hearing with more disruptive behavior.  The HO's decision to conduct the hearing in Roberts' absence is equivalent to removal for disruptive behavior permitted by WAC 137-28-300(5).  This did not deprive Roberts of his accorded minimum due process.

Roberts claims the HO "lied" about the reason Roberts was absent from the hearing.  According to Roberts, he was not absent due to behavioral issues. He maintains that he was in a mental health session and unavailable for the hearing.  Roberts produced no evidence to support his claim.  This conclusory allegation does not support a successful petition.  See Gronquist, 138 Wn.2d at 396.

Infraction Group 4

On March 1, 2017, Roberts received a rule 506 infraction for "[t]hreatening another with bodily harm or with any offense against any person or property" due

6

to his conduct during the disciplinary hearing for Infraction Group 1.[5]  The infraction report states that Roberts used profanity and threatened to assault the HO and file a PREA against him.  Officers then escorted Roberts out of the hearing room.

At a subsequent disciplinary hearing before a different HO, the HO reviewed a written staff report and found that Roberts committed the infraction.  The HO sanctioned Roberts with a 10-day loss of good-conduct time.  An associate superintendent affirmed the decision on appeal.

Roberts claims DOC denied him the opportunity to provide a written statement.  We disagree.  The evidence shows that Roberts asked to submit a written statement before the hearing but was told he could bring a statement to the hearing instead.  Roberts testified about his version of the incident at the hearing.

Roberts also argues DOC deprived him of the right to present audio and video evidence.  During the hearing, Roberts repeatedly requested the HO to examine the audio and video of the hearing where he allegedly made the threatening statements.  He argued that the recording would show that the HO turned off the audio recording at the time he made the alleged threats.  The HO declined to examine the recording.  After finding Roberts committed the infraction, the HO explained to Roberts that he did not consider the evidence because HOs customarily turn off the audio any time a hearing stops.

---

[5] WAC 137-25-030(506).

7

An inmate's minimum due process includes the right to present documentary evidence when appropriate. Malik, 152 Wn. App. at 220. However, an HO may exclude irrelevant, duplicative, or unnecessary evidence. WAC 137-28-285(1)(f). When excluding evidence, the HO "must generally state proper reasons for doing so, either at the time of the hearing or thereafter." Malik, 152 Wn. App. at 220.

Here, the HO informed Roberts about the limitations of the audio and video recordings at the conclusion of the hearing. He determined that the limitations of the evidence rendered it irrelevant to the disciplinary proceedings. This was a proper reason for excluding the evidence.

The HO found Roberts committed the infraction based on a written staff statement detailing Roberts' conduct. "Some evidence" supports the HO's finding. See Grantham, 168 Wn.2d at 216.

Infraction Group 5

On March 14, 2017, Roberts received a rule 605 infraction for "[i]mpersonating any staff member, other offender, or visitor" and a rule 718 infraction for "[u]sing the mail, telephone, or electronic communications in violation of any law, court order, or previous written warning, direction, and/or documented disciplinary action."[6] According to DOC, Roberts used the "Inmate Personal Identification Numbers" (IPINs) of multiple offenders to make telephone calls to Katrina Wooldridge. Wooldridge is the victim of the offense leading to Roberts' incarceration and is the protected party of a 10-year no-contact order

---

[6] WAC 137-25-030(605), (718).

prohibiting Roberts from contacting her. A DOC investigation showed that Roberts attempted 258 calls to Wooldridge's number in less than two months. Roberts completed 12 calls using the IPINs of other inmates.

The disciplinary HO reviewed and considered confidential information in the form of telephone conversations between Roberts and Wooldridge. The HO found Roberts committed both infractions and sanctioned him with a 30-day loss of good-conduct time. An associate superintendent affirmed Roberts' appeal.

Roberts claims DOC deprived him minimum due process based on the improper use of confidential information. We agree.

Certain procedures govern the use of confidential information in a disciplinary hearing. See WAC 137-28-300(8). Off the record and out of the presence of the offender, the HO must review the confidential information and make an independent determination of the reliability of the source, the credibility of the information, and the necessity of confidentiality. WAC 137-28-300(8)(a). The HO must make these determinations on the record. WAC 137-28-300(8)(c). DOC is also required to provide the inmate with a summary of any confidential information used in a disciplinary proceeding. Malik, 152 Wn. App. at 220.

DOC did not identify the existence of confidential information on either the infraction report or the infraction review checklist. As a result, DOC cannot reasonably claim that Roberts received notice that the HO would consider confidential information. See Malik, 152 Wn. App. at 221. Furthermore, the HO did not make any findings about credibility, reliability, or the need for

9

confidentiality on the record. DOC failed to satisfy the requirements for utilizing confidential information.

DOC claims these findings were unnecessary because the HO did not use confidential information or informants in making the determination. According to DOC, the telephone calls were not confidential and the HO did not play the recordings because review of physical evidence is not required during the hearing. DOC also contends that Roberts received all information related to the infraction, including the name, telephone number, and calls placed to the victim.

Nonetheless, the disciplinary minutes and findings clearly state that the HO reviewed confidential information. On review of a PRP, we examine the evidence of the hearing in the record. Krier, 108 Wn. App. at 45. Here, the record of the hearing lists confidential information as evidence the HO considered. We conclude that Roberts did not receive his minimal due process rights during this disciplinary hearing and grant his petition with respect to Infraction Group 5.

Infraction Group 6

On March 23, 2017, Roberts received a rule 554 infraction for "[d]amaging, altering, or destroying any item that is not the offender's personal property, the value of which is [$10] or more," and a rule 600 infraction for allegedly breaking the indication switch in his cell.[7] DOC maintenance reported that multiple kicks broke the switch. Replacing the indication switch cost $50.

---

[7] WAC 137-25-030(554); see WAC 137-25-030(600).

Roberts was absent from the disciplinary hearing. The hearing minutes and findings state that Roberts "refused to attend." The HO considered two pictures of the damage to the cell door. The HO found Roberts guilty based on review of the pictures and staff written testimony. Roberts lost 45 days of good-conduct time as a sanction. Roberts did not appeal this finding.

In his PRP, Roberts claims a violation of his procedural rights because he did not receive a written summary of the supporting evidence. We agree.

An offender must receive written notice of the alleged violations and a summary of supporting evidence at least 24 hours before a hearing. WAC 137-28-285(1)(b). For this infraction, the report stated DOC took no photographic evidence. However, the disciplinary hearing minutes and findings show that the HO considered two pictures of damage to the cell door. DOC did not inform Roberts of these photographs in advance of the hearing.

DOC does not dispute that Roberts lacked proper notice of the photographic evidence. Instead, DOC argues that Roberts received adequate notice of the facts of the infraction through the summary in the "Initial Serious Infraction Report." DOC also claims that any mistake in failing to notify Roberts of the photographic evidence was not so arbitrary and capricious as to deprive him of a fundamentally fair proceeding.

Failure to notify Roberts of the photographic evidence violates a specific right guaranteed by minimum due process afforded prisoners. See Gronquist, 138 Wn.2d at 396-97. DOC did not comply with this minimum standard. Because Roberts did not receive this due process protection, DOC denied him a

11

fundamentally fair proceeding.  See Krier, 108 Wn. App. at 38.  His loss of good time from this disciplinary proceeding results in unlawful restraint.  See Reifschneider, 130 Wn. App. at 501.  We grant his petition with respect to Infraction Group 6.

Infraction Group 7

On March 23, 2017, Roberts received a rule 896 infraction for

[h]arassing, using abusive language, or engaging in other offensive behavior directed to or in the presence of another person(s) or group(s) based upon race, creed, color, age, sex, national origin, religion, sexual orientation, marital status or status as a state registered domestic partner, disability, veteran's status, or genetic information

and a rule 558 infraction for "[i]nterfering with staff members, medical personnel, firefighters, or law enforcement personnel in the performance of their duties."[8] According to the infraction report, Roberts pushed the emergency button in his cell and then reported a nonemergency situation.  After the CO warned him he would receive an infraction if he continued to push the button, Roberts pushed the button multiple times but "did not report an emergent issue."  Roberts used profane and insulting language, including racial and sexual slurs, toward the CO.

Roberts did not attend the disciplinary hearing.  The HO found him guilty of both violations and sanctioned him 30 days of good-conduct time.  Roberts did not appeal.

Roberts contends he had no knowledge of the infraction or the hearing. The record shows DOC provided the disciplinary hearing notice to Roberts more than 24 hours before the hearing.  Roberts "refused to sign" receipt of the notice.

---

[8] WAC 137-25-030(896), (558).

A witness signed the notice, stating Roberts received it. Roberts also refused to attend the hearing, thereby waiving his right to be present. WAC 137-28-300(2)(b). Roberts received his minimum due process rights.

Further, the HO considered staff written testimony describing the incident in support of the infraction. As a result, "some evidence" supports the HO's decision and the decision was not arbitrary and capricious. See Malik, 152 Wn. App. at 218.

Infraction Group 8

On March 23, 2017, Roberts received another rule 506 infraction when a sergeant found a message written on the back of his cell door that threatened a CO and made a racial slur.[9] The sergeant did not obtain photographic or video evidence.

According to the disciplinary hearing minutes and findings, Roberts "refused to attend" the hearing on this infraction. Based on staff written testimony, the HO found Roberts guilty and sanctioned him 45 days of good-conduct time. Roberts did not appeal.

Roberts contends he had no knowledge of this infraction or the alleged threats. However, DOC provided the disciplinary hearing notice more than 24 hours in advance of the hearing. The hearing notice contains the signature of a witness that states Roberts received the documents and a notation that Roberts "refused to sign." According to two segregation officers, Roberts also refused to attend the hearing. Failure to appear at a hearing waives the right to be present.

---

[9] See WAC 137-25-030(506).

WAC 137-28-300(2)(b). Based on the evidence, Roberts received his minimum due process rights.

Further, the HO considered staff written testimony detailing the threat and slur in support of the infraction. "Some evidence" underlies the HO's decision and the disciplinary action was not arbitrary and capricious. See Malik, 152 Wn. App. at 218.

Infraction Group 10

On May 14, 2017, Roberts received a rule 602 infraction for "[p]ossessing, manufacturing, or introducing any firearm, weapon, sharpened instrument, knife, or poison, or any component thereof."[10] While conducting a search of Robert's cell, a CO found "1 loose razor blade along with 1 complete razor. The razor was altered to the point the razor blade could be eas[i]ly accessed but had the appearance of a normal razor."

At the disciplinary hearing, Roberts told the HO that his razor was old and that it broke when he tapped it against the sink. Roberts' cellmate submitted a witness statement that Roberts tapped the razor on the sink and it broke. According to the cellmate, Roberts attempted to fix the razor. The HO found that Roberts committed the rule 602 infraction and Roberts received 30 days segregation, a 60-day loss of good-conduct time, and 60 days of lost store privileges. The superintendent affirmed Roberts' appeal.

Roberts claims the evidence does not support the infraction. He argues that inmates can buy razors in the commissary and that the broken razor did not

---

[10] WAC 137-25-030(602).

14

look like a weapon. However, "some evidence" supports the HO's decision. See Anderson, 112 Wn.2d at 549. Two COs described the altered razor in their reports. The HO found that the razor "[l]ooks like a weapon and this is a prison." While Roberts asserts he did not intend the broken razor to be a weapon, a bare razor blade clearly has the potential to become a weapon. The evidence shows Roberts possessed the altered razor. This is a reasonable connection that supports the action taken by the prison disciplinary board. See Anderson, 112 Wn.2d at 549.

Infraction Group 29

On February 25, 2018, Roberts received a rule 600 infraction for covering his cell window with paper and refusing multiple times to remove it when ordered.[11] DOC held the disciplinary hearing the same day that it issued the hearing notice. Roberts did not appear at the hearing. The HO found that Roberts waived his right to notice of the disciplinary hearing and his right to appear. The HO found Roberts guilty based on "staff documentation" and sanctioned him with 60 days of lost telephone privileges and in-person visits. An associate superintendent affirmed his appeal.

DOC expunged this infraction on September 9, 2019. Expungement effectively and adequately addresses Roberts' challenge to this infraction. See In re Pers. Restraint of Higgins, 152 Wn.2d 155, 162-63, 95 P.3d 330 (2004) (citing RAP 16.4(d)). Any issue with respect to this infraction is now moot. In re Det. of Cross, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983) ("A case is moot if a

---

[11] See WAC 137-25-030(600).

court can no longer provide effective relief."). Therefore, we dismiss Roberts' petition as to Infraction Group 29.

Infraction Group 33

On March 29, 2018, Roberts received a rule 704 infraction for "[a]ssaulting a staff member" and a rule 717 infraction for "[c]ausing a threat of injury to another person by resisting orders, assisted movement, or physical efforts to restrain" after an incident where he allegedly injured a CO's thumb.[12] According to the infraction report, Roberts "quickly and forcefully" pulled his hands into the "cuffport" in his door during an involuntary medication injection. The CO's hand hit the door, "causing soreness" in his thumb. The report states there is video evidence.

Roberts appeared at the disciplinary hearing. The HO reviewed the video of the incident and acknowledged that he could not see Roberts' hand movement. The HO told Roberts:

> [I]t is not a staff assault. It's causing injury by resisting um, assisted movement. Um, you did comply with the involuntary medication injection um, for once you were totally compliant, you didn't, you weren't running your mouth, you were, you were compliant, I give you, um, so that's appropriate that you behaved appropriately there. Um, I have no reason to disbelieve the officer that he, his finger was, um, injured during the process.

The HO dismissed the rule 717 infraction. The HO reduced the rule 704 infraction to a rule 777 infraction for "[c]ausing injury to another person by resisting orders, assisted movement, or physical efforts to restrain."[13] Roberts

---

[12] WAC 137-25-030(704), (717).

[13] WAC 137-25-030(777).

lost 8 days of good-conduct time and telephone privileges for 15 days. An associate superintendent affirmed his appeal.

Roberts argues the evidence does not support the reduced infraction because the record shows he did not resist. We agree. The HO's statements at the disciplinary hearing specifically state that Roberts was "totally compliant" and appropriately behaved. "Totally compliant" necessarily means that Roberts did not resist. Without a showing of resistance, there is no evidence to support the reduced infraction. The officer's injury alone is not sufficient. Due to the lack of evidentiary support, the HO's decision was arbitrary and capricious. See Krier, 108 Wn. App. at 38. The resulting loss of good-time credit is an unlawful restraint. See Reifschneider, 130 Wn. App. at 501. Therefore, we grant Roberts' petition on Infraction Group 33.

Statement of Additional Grounds

Roberts submitted a statement of additional grounds asserting that he lost five days of good-conduct time for every month he spent in the Intensive Management Unit awaiting investigation and adjudication of his infractions. He requests relief. DOC interprets this as a claim to a "liberty interest in the potential to earn good conduct time" that has been "squarely rejected" by Washington courts. We agree. Inmates do not have a liberty interest in the right to earn good-conduct credits. In re Application for Relief from Pers. Restraint of Galvez, 79 Wn. App. 655, 659, 904 P.2d 790 (1995). Rather, they have an interest in credits already earned. See Galvez, 79 Wn. App. at 659 (citing Anderson, 112 Wn.2d at 548). Accordingly, his petition fails.

We affirm in part, reverse in part, and remand with the instruction that DOC restore Roberts' good-conduct credits for Infraction Groups 5, 6 and 33.

Brennan, J.

WE CONCUR:

Mann, C.J.