[No. 42570-6-I. Division One. November 22, 1999.]

*In the Matter of the Personal Restraint of* RAYMOND
McVAY, *Petitioner.*

*Gregory Charles Link* of *Washington Appellate Project,* for petitioner.

*Christine O. Gregoire, Attorney General,* and *Douglas Wayne Carr, Assistant,* for respondent.

WEBSTER, J. — Raymond D. McVay, a prisoner, received 10 days disciplinary segregation for committing a "602 infraction"—possessing the components of a knife, sharpened instrument, or other weapon in prison. He has filed a personal restraint petition (PRP) claiming: (1) He is under "restraint"; and (2) the "restraint" is unlawful because the disciplinary decision leading to it was not supported by "some evidence" and because he was denied the assistance of a staff advisor.

## FACTS

On February 3, 1998, a correctional officer conducted a security check of the "MSC Industries Sign Shop" at the Washington State Penitentiary in Walla Walla. During the

security check, he discovered 19 pieces of metal measuring one and one-half inches wide and ten inches long concealed in the back of a desk drawer in the screening department. The officer documented and photographed the metal pieces and then secured them in the shift lieutenant's office for further investigation.

Another officer interviewed three inmates who stated they "knew nothing." He then interviewed McVay who stated that he knew about the metal pieces because they were in his desk drawer. McVay told the officer that the purpose of the metal pieces was for replacing the labels on the silk screen frames. An inmate who had given them to McVay said he was authorized to cut the metal pieces two months prior.

The officer noted that a supervisor had instructed the inmates to dispose of materials such as the metal pieces. In a memorandum dated February 4, 1998, this supervisor stated, "Last week I went to the recycle [sic] room, screening area, and layout area, and specifically told the inmates to go through their desks and lockers to make sure that everything there was needed and approved." Memorandum from Dixon to Lt. Maguire (Feb. 4, 1998) at 1-2. He also stated that he did not recall giving authorization to cut the metal pieces. A different supervisor initially said that he did not give authorization either, but later redacted his statement and recalled giving his approval to McVay.

On February 5, 1998, McVay received notice of the infractions charged against him and his hearing date (Feb. 10, 1998). McVay requested a staff advisor on the notice form. A prison official denied his request for a staff advisor, stating "not needed" on the form. McVay and a prison official both signed the form.

At McVay's disciplinary hearing on February 10, 1998, the hearing officer found McVay "guilty of possession of a weapon" and sanctioned him to 10 days' segregation and loss of 90 days' good time for 360 days. Upon McVay's appeal, the superintendent reduced the sanction to a repri-

mand and warning and limited the disciplinary segregation to time served. Prison officials recommended release to the general population and noted, "Further investigation indicates metal found was authorized for cutting by work supervisors." Classification Referral/Administrative Segregation.

## DISCUSSION
### I. Restraint

An initial question presented is whether McVay, a prisoner, is under "restraint" when charged with a serious infraction. A personal restraint petition requires the petitioner to be under "restraint." *See* RAP 16.4. RAP 16.4(b) states:

> A petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

McVay argues that he satisfied the "restraint" requirement because the disciplinary decision potentially allows the Indeterminate Sentencing Review Board (ISRB) to increase his minimum sentence. The State contends that the ISRB makes its own determination of whether prison infractions actually occurred when considering minimum sentence increases. McVay responds that he may not be able to collaterally attack this infraction later, and therefore meets the "restraint" requirement of RAP 16.4(b).

■ Here, McVay is under "restraint" for purposes of RAP 16.4(b) because a prison disciplinary hearing officer found him guilty of a serious infraction and imposed disciplinary segregation and loss of good time credits (that the prison superintendent later redacted). *Cf. In re Personal Restraint of Gronquist*, 138 Wn.2d 388, 397, 978 P.2d 1083

(1999) (In serious infraction hearings, Washington prisoners are entitled to minimum due process); *In re Personal Restraint of Richardson*, 100 Wn.2d 669, 670, 675 P.2d 209 (1983) (restraint may include "a serious blot" on a person's record resulting from a conviction even if the person has completed his or her sentence). We need not reach McVay's argument that since the disciplinary decision potentially allows the ISRB to increase his minimum sentence, he is under restraint. It is too speculative as to what the ISRB will do. Having found McVay to be under sufficient restraint for purpose of our review, we consider the merits of the personal restraint petition. In view of the record, as discussed below, we find no merit and dismiss accordingly.

## II. Unlawful Restraint

 The court will grant relief to a petitioner if the restraint is unlawful for reasons defined in RAP 16.4(c). *See* RAP 16.4(a). A petitioner may obtain full collateral review of a conviction or sentence if the petitioner demonstrates "actual and substantial" prejudice from a constitutional error, or nonconstitutional error that inherently results in a complete miscarriage of justice. *See In re Personal Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). A petitioner must support his claim with facts or evidence of unlawful restraint, and not merely conclusory allegations. *See id.* at 813-14.

██ McVay claims that his restraint was unlawful, citing RAP 16.4(c)(2) and (6). Under RAP 16.4(c)(2), restraint is unlawful when a conviction, sentence, or other order violates the federal or state constitution or state law. RAP 16.4(c)(6) makes restraint unlawful when conditions or manner of the restraint violate the federal or state constitution or state law. McVay contends that the disciplinary decision failed to meet minimum standards of due process, and therefore constitutes constitutional error. The State argues that McVay is not entitled to minimum due process

because he has not demonstrated deprivation of a protected liberty interest.

The Washington Supreme Court has held that prisoners are entitled to minimum due process in "serious infraction" hearings. *See Gronquist*, 138 Wn.2d at 397. Here, prison officials charged McVay with a "602" infraction listed under WAC 137-28-260 as a "serious infraction." After the disciplinary hearing, McVay received 10 days segregation and loss of 90 days good time for 360 days. However, the prison superintendent eliminated the loss of good time upon appeal. Although McVay did not actually suffer loss of good time, McVay did appear in a "serious infraction" hearing. Therefore, following *Gronquist*, we find that McVay was entitled to minimum due process in that hearing. 138 Wn.2d at 397.

A. Sufficiency of Evidence

 McVay claims his "restraint" was unlawful because the disciplinary decision leading to it was not supported by "some evidence." Factual findings made by prison officials must stand if there is "some [or any] evidence" in the record to support the disciplinary decision. *See Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) *cited in Gronquist*, 138 Wn.2d at 397 n.7. The Washington Supreme Court has clarified the "some or any evidence" test: "[T]here essentially must be some reasonable connection between the evidence and the inmate in order to support actions taken by the prison disciplinary board." *In re Personal Restraint of Anderson*, 112 Wn.2d 546, 549, 772 P.2d 510 (1989).

In *Anderson*, a search of petitioner's cell led to the discovery of a knife in a shoe. *Id.* at 548. The petitioner in that case shared his cell with three other cellmates. *Id.* at 550. The record did not specifically connect petitioner to the knife. *See id.* at 548. In fact, one cellmate testified at the hearing that the knife belonged to a cellmate other than the petitioner. *Id.* Nevertheless, the board found against petitioner (as well as the other cellmates) and sanctioned him to 10 days' isolation, 20 days' segregation,

and the loss of 360 days of good time credit. *Id.* at 547-48. An essential fact in finding against all four cellmates is the cell tag regulation that provided: " 'Each inmate of a multiple-inmate cell will be held accountable for an infraction that occurs within the confines of such cell unless he/she can establish a lack of involvement in the infraction.' " *Id.* at 548. The Washington Supreme Court held that a sufficient connection existed between the petitioner and the knife to satisfy the limited due process available to prisoners. *Id.* at 550. In other words, there was *some* evidence that any one of the cellmates, or all four of them, committed an infraction involving the knife. *See id.*

In the case before this court, there was some evidence that McVay committed the 602 infraction. Prison officials found the 19 metal pieces in his desk drawer. McVay admitted to possessing them. Upon initial investigation, officials found that he did not have authorization to possess these metal pieces. Therefore, a sufficient connection exists between McVay and the 19 metal pieces to satisfy the limited due process afforded prisoners.[1]

B. Staff Advisor

McVay also claims that prison officials unlawfully denied him a staff advisor to help him gather evidence for the disciplinary hearing. WAC 137-28-340(1) provides that a hearing officer *may* appoint a staff advisor to help an inmate prepare for a hearing. Factors (relevant to this case) that the hearing officer must consider prior to assigning a staff advisor are the inmate's literacy, the complexity of the issue, the inmate's overall ability to speak for himself and adequately present his case, and any disability that might impair the inmate's ability to adequately defend himself. *See* WAC 137-28-340(1)(a)-(c), (f). In qualifying the necessity in appointing a staff advisor, WAC 137-28-340(2) states: "The assignment of a staff advisor will only be necessary after considering these factors. This section should not be construed to mean that a staff advisor must be assigned."

---

[1]Although the disciplinary sanction was wrongful, we are unable to provide relief.

Additionally, WAC 137-28-290(2)(e) provides the inmate with written notice of whether he has a right to seek help from a staff advisor when officials have determined that the inmate is unable to adequately represent himself because "of literacy, competence, or other disability."

■ The Supreme Court has said that an inmate preparing for a disciplinary hearing is entitled to assistance from a staff advisor or another inmate if he is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present evidence necessary for an adequate comprehension of the case . . . ." *Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). WAC 137-28-340(1) and WAC 137-28-290(e) provide proper procedures for fulfilling this requirement.

McVay was neither illiterate nor was the 602 infraction so complex as to require a staff advisor. He has not demonstrated any other disability that might have impaired his ability to adequately defend himself. Therefore, prison officials lawfully denied his request for a staff advisor.

In view of the record, we deny McVay's personal restraint petition.

Cox and APPELWICK, JJ., concur.

After modification, further reconsideration denied March 27, 2000.