IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 78038-7-I |
| | DIVISION ONE |
| JESS R. SMITH, | UNPUBLISHED OPINION |
| Petitioner. | FILED: October 21, 2019 |

CHUN, J. — Jess Smith sent a kite[1] to a prison staff member offering to settle his pending federal lawsuit. For this, the Department of Corrections (DOC) found him guilty of the serious violation of "extorting or blackmailing."[2] Smith filed this personal restraint petition (PRP), seeking review of the decision.

Smith contends (1) the DOC lacked evidence to support the infraction of extortion and (2) it charged him in retaliation for exercising his constitutional right to petition the court. We conclude that res judicata and collateral estoppel bar Smith's retaliation claim but not his procedural due process evidentiary challenge. We further conclude that the evidence does not support a finding that Smith's actions amounted to extortion. We grant Smith's petition and remand to DOC for a rehearing.

---

[1] Kites are DOC forms given to inmates to communicate with prison staff, attorneys, and others. State v. Puapuaga, 164 Wn.2d 515, 518 n.2, 192 P.3d 360 (2008).

[2] See WAC 137-25-030(503).

## I. BACKGROUND

Petitioner Jess Smith currently serves time at Coyote Ridge Correctional Center for convictions of first degree murder and first degree manslaughter. On March 17, 2017, after Smith allegedly made an offensive and derogatory statement about another offender, DOC mental health provider Keith Goodenough filed an infraction report against him for violating WAC 137-25-030(1) (Category C – Level 1:896 - harassing, using abusive language, or engaging in other offensive behavior directed to or in the presence of another person(s) or group(s) based upon race, creed, color, age, sex, national origin, religion, sexual orientation, marital status, or status as a state registered partnership) (896 Harassment Infraction). On March 27, 2017, a disciplinary hearing officer found Smith not guilty of the 896 Harassment Infraction.[3]

On April 28, 2017, Smith filed a pro se civil rights lawsuit (the First Lawsuit) against Goodenough and two other DOC staff members, asserting that the 896 Harassment Infraction report violated his First and Fourteenth Amendment rights.[4] On May 23, 2017, the federal district court clerk notified Smith that his case was "currently before the Court for review."[5]

---

[3] This court dismissed Smith's personal restraint petition regarding the 896 Harassment Infraction (See Order of Dismissal, In re Pers. Restraint of Smith, No. 76889-1-I (Wash. Ct. App. Feb. 28, 2018).

[4] Smith v. Goodenough, No. 17-CV-05060, 2017 WL 8793473 (E.D. Wash. July 26, 2017) (court order).

[5] 28 U.S.C. § 1915A (court shall screen civil complaints filed by prisoners seeking redress from a governmental entity or its employees and dismiss any complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief form an entity that is immune from such relief).

On July 17, 2017, before the district court reviewed the complaint, Smith sent a kite to Goodenough stating:

> As you are aware a suit that is TRIABLE has been started in Smith v. Goodenough, No. 4:17-CV-05060-MKD (U.S.D.C. IN SPOKANE). We can resolve this matter for a $750.00 store credit and $250.00 JPay CREDIT. Please contact me if you want to solve matter out of court. Thank you.

In response, Goodenough charged Smith with violations of WAC 137-25-030(1) (Category B – Level 3:503 - extorting or blackmailing, or demanding or receiving anything of value in return for protection against others or under threat of informing) (503 Extortion Infraction) and WAC 137-25-030(1) (Category B – Level 3:558 - interfering with staff members, medical personnel, firefighters, or law enforcement personnel in the performance of their duties) (558 Interference Infraction). Both are "serious violations." WAC 137-25-030. On July 24, 2017, disciplinary hearing officer M. Knighton dismissed the 558 Interference Infraction but found Smith guilty of the 503 Extortion Infraction. In so ruling, Knighton reasoned:

> After contacting WSP Legal Liaison Shari Hall, I was informed that a suit has been filed in Federal Court, but has not been served to the defendants as of today. The steps the offender has taken are premature and improper. I find that the offender is attempting to extort money from the defendants as the offender is attempting to have the defendants pay him to drop the suit. Even if the suit was at the point of offering a settlement, the process the offender took is not appropriate.

Knighton imposed a sanction of 20 days lost recreation time and 15 days of confinement to quarters. On July 27, 2017, DOC denied Smith's appeal of the 503 Extortion Infraction, explaining as follows:

The steps you took to try and "remedy" this were premature and inappropriate. As there was no suit filed at the time, you were trying to extort money from the defendants to drop the legal action you are seeking.

On July 25, 2017, after screening the First Lawsuit, the federal district court determined Smith's claim that Goodenough issued a retaliatory infraction sufficed to require a response but that his remaining constitutional claims did not. The court granted Smith the opportunity to amend or dismiss his claim within 60 days. Smith did not do either. On January 12, 2018, the court dismissed the First Lawsuit without prejudice as to Goodenough and with prejudice as to the remaining defendants. On April 25, 2018, Smith refiled the claim against Goodenough. DOC's response brief in this matter indicated that the First Lawsuit remained pending and that Goodenough was represented by the Attorney General's Office.

On February 12, 2018, Smith, representing himself, filed this PRP challenging the 503 Extortion Infraction. Smith's PRP asserts two distinct grounds for relief. First, he asserts the infraction violated his state and federal due process rights because the evidence does not support an infraction for extortion. Second, he contends DOC charged him for exercising his constitutional right to access the court. This court appointed counsel for Smith and referred his PRP to a panel for determination on the merits.

On August 29, 2018, while his PRP in this court was pending, Smith filed a federal complaint against Goodenough and Knighton regarding the 503 Extortion

Infraction (the Second Lawsuit).[6] Smith's complaint asserted two grounds for relief: (1) Goodenough issued the infractions in retaliation for Smith exercising his First Amendment right to access the court and (2) Knighton violated his First Amendment right by finding him guilty of the extortion infraction. On November 1, 2018, the federal district court dismissed the Second Lawsuit with prejudice.[7] The court ruled that Smith failed to state a plausible First Amendment retaliation claim against Goodenough, because there is no constitutional right for prisoners to directly engage in settlement negotiations with prison staff, and preventing such conduct serves a legitimate correctional goal. The court further ruled that Smith failed to state a First Amendment due process claim against Knighton.

DOC and Smith's appointed counsel subsequently filed briefing in this court for Smith's PRP. Both parties' arguments focused solely on Smith's First Amendment retaliation claim and did not address his claim that the evidence does not support an infraction for extortion. Following oral argument, we requested supplemental briefing regarding the latter issue, which both parties provided.

---

[6] In the Second Lawsuit, Smith originally filed the complaint against Goodenough and two other defendants in April 2017. Order Dismissing First Am. Compl., Smith v. Goodenough, No. 4:18-CV-05098-SMJ, 2018 WL 1790024 at 1, (E.D. Wash. Jan. 12, 2018) (Order Dismissing Compl.). The federal district court dismissed the complaint without prejudice as to refiling against Goodenough. Smith did refile. Order Dismissing Compl., Smith, supra, at 2.

[7] Order Dismissing Compl., Smith, supra.

## II ANALYSIS

"[P]risoners challenging prison discipline need not make a prima facie case of constitutional error and actual and substantial prejudice or nonconstitutional error and total miscarriage of justice." In re Pers. Restraint of Grantham, 168 Wn.2d 204, 218, 227 P.3d 285 (2010). Smith must show only that he is under unlawful restraint as defined by RAP 16.4. In re Pers. Restraint of Stuhr, 186 Wn.2d 49, 52, 375 P.3d 1031 (2016). As an inmate confined in a state correctional facility, Smith is under "restraint." Kozol v. Dep't of Corr., 185 Wn.2d 405, 409, 379 P.3d 72 (2016). The question is whether his restraint is "unlawful" and thus redressable by a personal restraint petition.

A. Res Judicata and Collateral Estoppel

DOC contends that the doctrines of res judicata and collateral estoppel operate as a bar to Smith's PRP based on the federal district court's November 1, 2018 order dismissing with prejudice Smith's federal complaint regarding the extortion infraction.

"Res judicata and collateral estoppel are kindred doctrines designed to prevent repetitive litigation." Eckstrom v. Hansen, 4 Wn. App. 2d 580, 584, 422 P.3d 926 (2018). The party asserting these defenses bears the burden of proof. In re Pers. Restraint of Metcalf, 92 Wn. App. 165, 174, 963 P.2d 911 (1998).

Res judicata, or claim preclusion, bars the relitigation of claims that were, might, or should have been litigated in a prior action. Weaver v. City of Everett, 4 Wn. App. 2d 303, 320, 421 P.3d 1013 (2018). "Res judicata . . . applies where a

prior final judgment is identical to the challenged action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." Lynn v. Dep't of Labor & Indus., 130 Wn. App. 829, 836, 125 P.3d 202 (2005) (internal quotation marks omitted). A court should not apply the doctrine when it would work an injustice. Metcalf, 92 Wn. App. at 174.

We agree with DOC that res judicata operates to bar Smith's First Amendment retaliation claim against DOC. First, the Second Lawsuit and the PRP addressed the same subject matter: Smith's extortion infraction. Second, both involved the same cause of action: whether the infraction violated Smith's First Amendment right to access the courts. Both involved the same set of facts supported by the same evidence and the same legal theories. See Emeson v. Dep't of Corr., 194 Wn. App. 617, 628, 376 P.3d 430 (2016). Third and fourth, there exists identity in (a) persons and parties and (b) the quality of persons against whom the constitutional claim is made. Although Smith directs the petition at DOC and he directed his Second Lawsuit at Goodenough and Knighton, the employer-employee relationship suffices to establish privity for purposes of res judicata. See Emeson, 194 Wn. App. at 636.

Collateral estoppel also bars Smith's First Amendment retaliation claim against Goodenough and Knighton. Collateral estoppel, or issue preclusion, prevents the same parties from relitigating issues actually raised and resolved by

a former verdict and judgment. State v. Williams, 132 Wn.2d 248, 253–54, 937 P.2d 1052 (1997). Collateral estoppel requires four elements:

> (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of the doctrine must not work an injustice.

Williams, 132 Wn.2d at 254 (quoting State v. Cleveland, 58 Wn. App. 634, 639, 794 P.2d 546 (1990)). Here, Smith asserted that the infraction violated his First Amendment rights, and the Second Lawsuit resolved the identical issue on the merits among parties in privity. And Smith does not show how application of the doctrine to Smith's First Amendment claim would work an injustice.

However, our analysis differs with respect to Smith's evidentiary challenge. In the PRP, Smith asserted that there is no evidence, under the "some evidence" test that he is guilty of extortion or blackmail. In contrast, Smith's federal complaint did not raise this issue.[8] To determine whether the causes of action are the same for purposes of res judicata, we consider the following criteria: (1) whether the second action would impair rights or interests established in the prior judgment; (2) whether the two actions deal substantially with the same evidence; (3) whether the two suits involve an alleged infringement of the same right; and (4) whether the two suits arise out of the same

---

[8] We note that the federal court concluded that Smith failed to state a "First Amendment due process claim against Defendant Knighton" because he was not entitled to procedural due process protections. Order Dismissing Compl., Smith, supra, at 3-4. Given that Smith's federal complaint did not expressly address his due process evidentiary claim, the federal court's cursory due process analysis is not preclusive.

transactional nucleus of facts. Kuhlman v. Thomas, 78 Wn. App. 115, 122, 897 P.2d 365 (1995).

Here, the PRP and the Second Lawsuit concern the same evidence and arose from the same nucleus of facts. But Smith's PRP alleged that DOC infringed his due process right to have his claim supported by "some evidence," whereas the federal complaint did not. Moreover, res judicata does not bar state constitutional claims raised in the PRP. We therefore conclude that res judicata does not bar Smith from raising this issue in his PRP. Similarly, because the federal lawsuit and the PRP are not identical regarding this issue, collateral estoppel does not bar us from considering it.

## B. Adequate Remedy at Law

DOC next contends that this court should exercise its discretion to dismiss Smith's PRP under RAP 16.4(d) because the 42 U.S.C. § 1983 federal civil rights claim provided him an adequate remedy at law. We disagree.

"Ordinarily, an inmate challenging a prison disciplinary sanction does so by personal restraint petition." Kozol, 185 Wn.2d at 407. However, RAP 16.4(d) provides that this court will grant relief by means of a personal restraint petition only "if other remedies which may be available to petitioner are inadequate under the circumstances . . . ." Because a personal restraint petition is "not a substitute for statutory avenues for review," RAP 16.4 places the burden on the petitioner to show that other remedies available to the petitioner are inadequate. In re Pers. Restraint of Meirhofer, 182 Wn.2d 632, 648, 343 P.3d 731 (2015).

We have previously rejected DOC's contention that a § 1983 action is an adequate alternative remedy to a PRP. In re Pers. Restraint of Arseneau, 98 Wn. App. 368, 989 P.2d 1197 (1999). In Arseneau, an inmate filed a personal restraint petition asserting that DOC violated his First Amendment free speech rights by prohibiting him from contacting his niece. This court held that the petitioner was not required to exhaust his civil remedies before challenging the DOC prohibition via personal restraint petition, as it implicated a constitutional right of significant importance. Arseneau, 98 Wn. App. at 374.

We are not persuaded by DOC's contention that a § 1983 action would provide an adequate remedy to Smith under the circumstances. Section 1983 provides a civil cause of action against any "person" who deprives another of "any rights, privileges, or immunities secured by" the United States Constitution. But a state agency is not a "person" within the meaning of § 1983. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 617, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002); Wash. State Republican Party v. Pub. Disclosure Comm'n, 141 Wn.2d 245, 285–86, 4 P.3d 808 (2000). Accordingly, Smith could not file a § 1983 claim against DOC. Moreover, if Smith were compelled to bring his constitutional claims in a § 1983 action, he would lack a forum to assert his state constitutional rights. We conclude that RAP 16.4(d) does not bar us from considering Smith's assertion that DOC lacked evidence to support his infraction.

C. Procedural Due Process

We now consider whether DOC violated Smith's due process rights by finding him guilty of the serious violation of "extortion or blackmail" pursuant to WAC 137-25-030(1) (Category B – Level 3:503). The due process clause prohibits deprivation of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. Thus, the threshold question is whether the extortion infraction implicated a protected liberty interest subject to minimum due process protections.

"Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" In re Pers. Restraint of Dyer, 143 Wn.2d 384, 392, 20 P.3d 907 (2001) (quoting Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)). "[T]o create a liberty interest, the action taken must be an atypical and significant deprivation from the normal incidents of prison life." Dyer, 143 Wn.2d at 393 (citing Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

"A prisoner's statutory right to earn good time credits is a 'protected liberty interest in those credits which prevents their deprivation absent observation of minimum due process requirements.'" In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 397, 978 P.2d 1083 (1999) (quoting In re Pers. Restraint of Johnston, 109 Wn.2d 493, 497, 745 P.2d 864 (1987)). Prisoners found guilty of serious infractions face the potential loss of good time credit as a sanction,

whereas prisoners found guilty of general violations do not. See WAC 137-28-240 (sanctions for general violations) and WAC 137-28-350(3)(i) (sanctions for serious violations). Thus, "[i]n serious infraction hearings where sanctions include loss of good time credits, Washington prisoners are entitled to minimum due process." Gronquist, 138 Wn.2d at 397. In contrast, prisoners charged with general violations enjoy minimum due process protections only when facing a sanction that imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. Gronquist, 138 Wn.2d at 397 (citing Sandin, 515 U.S. at 484).

Smith contends that he is entitled to minimum due process because extortion is a "serious violation." DOC argues that Smith has no protected liberty interest because he did not lose good time credits and the sanctions imposed did not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" as required by Sandin. 515 U.S. at 484. But prisoners are entitled to minimum due process in serious infraction hearings, regardless of whether they actually suffer loss of good time as a sanction. See In re Pers. Restraint of McVay, 99 Wn. App. 502, 507, 993 P.2d 267 (1999)). In McVay, prison officials charged McVay with a "serious" violation pursuant to WAC 137-28-260. 99 Wn. App. at 507. After the hearing, McVay was sanctioned with 10 days segregation and loss of 90 days of good time for 360 days. However, the prison superintendent eliminated the loss of good time on administrative appeal. DOC argued that McVay was not entitled to minimum due

process because he failed to demonstrate deprivation of a protected liberty interest. McVay, 99 Wn. App. at 506-07. This court, following Gronquist, disagreed and held that McVay was entitled to minimum due process because he appeared in a "serious infraction" hearing, even though he did not actually suffer loss of good time. McVay, 99 Wn. App. at 507. Here, similarly, Smith appeared at a "serious violation" hearing where he faced possible loss of good time credits. Following Gronquist and McVay, we conclude that Smith is entitled to minimum due process, including application of the "some evidence" test to determine whether DOC's actions were arbitrary and capricious. See also Kozol, 185 Wn.2d at 411 (stating that "a serious infraction that does not result in the loss of early release credit still casts a shadow over an inmate's institutional history").

Smith contends that there was no evidence to support a finding that his actions in seeking to settle his lawsuit against Goodenough amounted to a violation of WAC 137-25-030(1) (Category B – Level 3:503 - extorting or blackmailing, or demanding or receiving anything of value in return for protection against others or under threat of informing). WAC Chapter 137-25, which governs serious violations at DOC confinement facilities, does not further define "extortion." "Rules of statutory construction apply to administrative rules and regulations." City of Seattle v. Allison, 148 Wn.2d 75, 81, 59 P.3d 85 (2002). Undefined terms are given their plain and ordinary meaning. United States v. Hoffman, 154 Wn.2d 730, 741, 116 P.3d 999 (2005). Webster's Third New International Dictionary defines "extort" as "to obtain from an unwilling or

reluctant person by physical force, intimidation, or the abuse of legal or official authority." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 806 (2002). Black's Law Dictionary similarly defines "extortion" as "[t]he practice or an instance of obtaining something or compelling some action by illegal means, as by force or coercion." BLACK'S LAW DICTIONARY 729 (11th Ed. 2019).

We conclude that Smith's actions do not support the infraction of extortion. Smith merely sent a settlement offer letter to Goodenough. Such conduct is not unlawful. Smith did not employ force, coercion, or intimidation. There is no evidence that Smith threatened to harm Goodenough if he failed to comply. Goodenough could have simply chosen to ignore Smith's kite without consequence. Because the evidence does not support a finding that Smith violated the infraction of extortion, the infraction was arbitrary and capricious.

DOC asserts that Smith's behavior was extortionate because he sent his settlement offer directly to Goodenough via kite before the federal court screened the case instead of waiting until the federal court authorized service so he could send the offer to Goodenough's appointed counsel. DOC also asserts that the offer was unlawful because DOC Policy 850.030 restricts DOC employees from giving or accepting gifts or gratuities or having financial dealings with inmates. But these alleged procedural improprieties did not add force or intimidation to Smith's offer.

DOC, relying on several out-of-jurisdiction cases, further argues that settlement demands may form the basis for an extortion claim. But DOC

14

concedes that such cases are in the minority. More fundamentally, cases supporting this proposition are factually distinguishable. See, e.g., Flatley v. Mauro, 39 Cal. 4th 299, 329-330 (2006) (settlement demand coupled with threats to disclose and publicize criminal activity constituted criminal extortion as a matter of law).

DOC asserts that if Smith is able to show a basis for relief in his PRP, the appropriate remedy is to remand for a new hearing at which the prison disciplinary officer could consider whether Smith's actions – which are undisputed – violated some lesser infraction. Because double jeopardy does not apply to prison disciplinary proceedings, a rehearing is permissible. In re Pers. Restraint of Higgins, 152 Wn.2d 155, 165, 95 P.3d 330 (2004). We therefore grant Smith's petition, reverse DOC's finding that Smith violated WAC 137-25-030 (503), and remand to DOC for a rehearing.

Granted and remanded.

_Chun, C.J._

WE CONCUR:

_Andrus, J._