IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 84895-0-I |
| | DIVISION ONE |
| LONNIE L. BURTON,[†] | UNPUBLISHED OPINION |
| Petitioner. | |

SMITH, C.J. — The petitioner challenges the disciplinary hearings associated with two infractions: Failing to Comply with Sanctions (a violation of WAC 137-25-030 (658)) and Fighting with Another Incarcerated Individual (a violation of WAC 137-25-030 (505)).  He filed this personal restraint petition (PRP), asserting that both hearings violated his due process rights, that there was insufficient evidence to support both infractions, and that the latter violated his constitutional right to self-defense.  Because both hearings met minimum due process requirements, "some evidence" supports both infractions, and the petitioner fails to establish a constitutional right to self-defense in prison, we deny the petitioner's personal restraint petition.

---

[†] On June 18, 2024, the petitioner filed a notice of name change and a Grays Harbor County District Court order changing name.  The petitioner asks that the title of this case bear his new name.  Under RAP 3.4, this court uses the same caption as the trial court but upon motion of a party, and notice to all parties, this court may change the title of a case by order.

FACTS

Petitioner is an incarcerated person in the custody of the Washington State Department of Corrections (DOC). In this petition, he does not challenge his underlying conviction or sentence. Rather, the petitioner challenges the disciplinary sanctions imposed based on two infractions: Failing to Comply with Sanctions (a violation of WAC 137-25-030 (658)) and Fighting with Another Incarcerated Individual (a violation of WAC 137-25-030 (505)).

### 658 Infraction

In August 2022, the petitioner was issued a minor sanction notification for failing to pick up his legal mail. He failed to attend the disciplinary hearing and was found guilty. The hearing officer sanctioned him with 10 days of cell confinement. This limited the petitioner's movements, confining him to his cell except for visits, meals, religious activities, school, and work.

The day after the petitioner's sanction took effect, Sergeant Kayla Palmer noticed the petitioner outside of his cell, carrying dinner trays toward the dining hall. Aware that the petitioner was confined to his cell, Sgt. Palmer called the petitioner's pod officer to verify whether the petitioner was a tray porter,[1] that the kitchen had requested tray porters to bring the trays down, and that the petitioner had permission to leave the unit. The petitioner's pod officer confirmed that the kitchen had not called for the trays and that the petitioner did not have

---

[1] Under COVID protocols, inmates were fed in unit by walking to the kitchen, picking up trays, and bringing them back to the unit to eat. Tray porters were specific individuals tasked with returning the trays to the kitchen when directed.

permission to leave.  Sgt. Palmer also asked the petitioner directly if he had permission to leave the unit.  He responded, "[n]o, I didn't ask."

Given this information, Sgt. Palmer wrote an infraction charging the petitioner with a failure to comply with his earlier sanction, a violation of WAC 137-25-030 (658).  The petitioner was notified of the charge on August 9, 2022.  In response, he requested four witness statements: three from correctional officers, Sgt. Palmer, Sergeant Richard Roberts, and Officer Paul Martin, and one from a fellow incarcerated person, Cory Simms.

Prior to the hearing, the petitioner asserted that Sgt. Roberts informed him that Officer Barry DeHaven, the hearing officer set for the petitioner's case, had directed Roberts what to say or not say in his witness statement.  The petitioner filed a staff misconduct grievance against Officer DeHaven, claiming witness tampering.  When the grievance was rejected based on hearsay, the petitioner appealed to DOC headquarters and requested that Officer DeHaven recuse himself from the hearing.[2]

The disciplinary hearing was held on August 30, 2022.  Unit Supervisor Kendra Wakefield acted as hearing officer.  The petitioner attended and spoke in his own defense.  He acknowledged leaving his cell without permission but asserted that he was working, which is an exception to cell confinement.  He also admitted, however, that he was not a tray porter.  He noted that he helped with trays to collect positive behavior log entries.  Unit Supervisor Wakefield excluded

_____

[2] Although Officer DeHaven was not the hearing officer for this first disciplinary hearing, no evidence exists in the record that he recused himself.

Sgt. Palmer as a witness because Sgt. Palmer had written the sanction report, but accepted the three other requested witness statements. Both Sgt. Roberts and Officer Martin stated that they were not present for the encounter and therefore had nothing to add. Simms left his witness statement blank. Considering the incident report, the petitioner's own testimony, and the witness statements, Unit Supervisor Wakefield found the petitioner guilty. She sanctioned him with the loss of dayroom privileges for three days. The petitioner appealed the finding but the Superintendent for Operations denied his appeal, stating that the written report supported a guilty finding.

<u>505 Infraction</u>

In October 2022, corrections officers monitoring the exercise yard saw the petitioner fighting with another incarcerated person, John Mayr. While playing pickleball, the petitioner had made a call that Mayr did not like. Mayr used a homophobic slur, which the petitioner returned. Mayr yelled, "let's do this," and hit the petitioner in the face. The petitioner retaliated, throwing punches back at Mayr.

When asked by DOC staff, Mayr admitted that he struck the petitioner. The petitioner initially denied the incident but eventually admitted to hitting Mayr. He asserted, however, that his actions were purely self-defense and that he stopped as soon as he felt Mayr could no longer harm him. The prison documented both men's injuries.

The petitioner was issued a serious infraction for fighting in violation of WAC 137-25-030 (505). He was notified of the charge against him on October 11, 2022. In response, the petitioner requested two witness statements from fellow incarcerated persons Lee Starks and Brian Dublin.

The disciplinary hearing was held on October 24, 2022. Officer DeHaven acted as hearing officer, despite the petitioner's earlier accusations of bias. The petitioner attended and spoke in his own defense. He asserted that Mayr had attacked him with a pickleball paddle and argued his right to self-defense. Both his requested witnesses provided statements, which were accepted and read into the record. The hearing officer also considered post-fight photographs of both men and the video of the altercation.

When Officer DeHaven stated that the video was not clear enough to determine whether Mayr used the pickleball paddle to hit the petitioner, the petitioner requested that Dublin, who had already submitted a witness statement, be allowed to provide supplemental testimony at the hearing. Officer DeHaven denied the request, stating that Dublin should have included all of the information in his original statement.

Relying on written testimony and the photographs and video of the fight, Officer DeHaven found the petitioner guilty of fighting. He sanctioned the petitioner with 10 days lost good conduct time, 10 days of cell confinement, 10 days loss of general privileges, and a mandatory two-year loss of weightlifting privileges. The petitioner appealed but the Associate Superintendent denied the

5

appeal on the basis that the documented injuries were consistent with mutual combat.

Following the denial of both appeals, the petitioner filed this personal restraint petition (PRP) in a timely manner.

ANALYSIS

We will reverse a prison disciplinary decision only upon a showing that the decision was so arbitrary and capricious as to deny the petitioner a fundamentally fair hearing. In re Pers. Restraint of Grantham, 168 Wn.2d 204, 215, 227 P.3d 285 (2010). A decision is arbitrary and capricious if it is willful and unreasoning, done " 'without consideration and in disregard of facts and circumstances.' " In re Pers. Restraint of Reismiller, 101 Wn.2d 291, 296, 678 P.2d 323 (1984) (quoting Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)). If a petitioner is awarded at least the minimum due process protections and the hearing officer's decision is supported by at least some evidence, the disciplinary decision is neither arbitrary or capricious. In re Pers. Restraint of Krier, 108 Wn. App. 31, 38, 29 P.3d 720 (2001).

Because prison disciplinary proceedings are not a part of a criminal prosecution, incarcerated persons are not entitled to the full panoply of rights awarded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Rather, when faced with serious infractions and the possible loss of good time credits, petitioners are entitled to minimum due process protections. In re Pers. Restraint of McVay, 99 Wn. App. 502, 507, 993 P.2d 267 (1999). Minimum due process requires that an inmate facing a

6

disciplinary hearing receive only (1) notice of the alleged violation, (2) an opportunity to present documentary evidence and call witnesses, and (3) a written statement detailing the evidence relied upon and the reasons for any disciplinary action. In re Per. Restraint of Gronquist, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999).

To proceed with disciplinary action, the hearing officer's conclusion must be supported by "some" or "any" evidence. Superintendent v. Hill, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed 2d 356 (1985). This is a relaxed standard, not requiring the court to examine the entire record, independently assess credibility, or weigh evidence. Hill, 472 U.S. at 455-56. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. There need only be a reasonable connection between the evidence and the inmate to support actions taken by a prison disciplinary board. In re Pers. Restraint of Anderson, 112 Wn.2d 546, 549, 772 P.2d 510 (1989).

The petitioner asserts that both disciplinary proceedings were arbitrary and capricious in violation of due process and that the 505 infraction also violated his constitutional right to self-defense. We disagree.

### 658 Infraction

The petitioner contends that the 658 infraction hearing violated due process because DOC staff interfered with witness statements and therefore violated his right to call witnesses. DOC argues that the petitioner received adequate due process during the hearing and that as the finding of guilt was

7

supported by some evidence, no such violation exists.  Given the lack of evidence to support witness tampering and enough evidence to support the guilty finding, the 658 infraction disciplinary hearing met all three minimum due process requirements.

First, the petitioner received written notice of the charged infraction and the facts supporting it in August 2022.  He does not challenge receiving this notice.  Next, the hearing officer held a hearing, which the petitioner attended.  He spoke in his own defense and had the opportunity to request witness statements.  Although Sgt. Palmer's witness statement was excluded because she had written the infraction report, the petitioner's other three witnesses all submitted statements.  Each were read into the record.  And lastly, following the finding of guilt, the petitioner received a written notice detailing the decision, the evidence relied on, and the reasons for resulting disciplinary sanctions.  Accordingly, the petitioner received the required due process.

The petitioner claims that the hearing did not meet due process requirements because Officer DeHaven told Sgt. Roberts, one of the petitioner's requested witnesses, what he could and could not say in his witness statement.  But the petitioner did not provide any evidence that Officer DeHaven actually interfered with Sgt. Robert's testimony.  Instead, he relies only on his own hearsay statements and the fact that he believes Officer DeHaven recused himself following the petitioner's complaint.  No evidence exists that Officer DeHaven recused himself.  Even if Officer DeHaven had, the purely conclusory claim that Officer DeHaven recused himself because he was guilty of interfering

with Sgt. Robert's testimony is not enough to establish a violation of the petitioner's right to request witness statements. In the end, Sgt. Roberts did provide a witness statement, under oath, which simply did not say what the petitioner hoped it would.

In addition, there was some evidence to support the hearing officer's guilty finding. The petitioner argues that the hearing officer ignored the fact that he was working when he was found outside of his cell, an exception to his cell confinement. But the petitioner admitted both that he was out of his cell without permission and that he is not a tray porter. He explained at the hearing that he returned dinner trays to collect positive behavior logs, not because it was his job to do so. And even had the petitioner been a tray porter, the pod officer confirmed that there had been no calls to return trays to the kitchen. Together, the staff reports and the petitioner's own testimony provide some evidence to support the hearing officer's guilty finding.

The hearing officer's decision was neither arbitrary nor capricious because the petitioner received minimum due process and the guilty finding was supported by some evidence.

505 Infraction

The petitioner argues that the 505 infraction hearing violated his due process rights, that the "some" evidence standard is unfair and should be replaced by a "preponderance of the evidence" standard, and that the hearing officer's finding of guilt violates the petitioner's constitutional right to self-defense. DOC asserts that the petitioner again received adequate due process, that some

evidence, which is the appropriate standard, supported the guilty finding, and that the petitioner does not have a right to self-defense. Even if he did have a right, DOC contends, the DOC's legitimate penological interests justify its blanket prohibition on fighting. Because the petitioner cannot prove that bias against him or inadequate documentation of the guilty finding undermined his minimum due process rights, "some" evidence is the established standard for incarcerated persons' interests in good time credits, and the petitioner fails to show that WAC 137-25-030(505) is unconstitutional, the 505 infraction hearing was neither arbitrary nor capricious.

1. Minimum Due Process

The petitioner contends that the 505 infraction hearing violated due process because Officer DeHaven was biased against him, refused to recall Dublin as a witness, and failed to adequately document his reasoning for the guilty finding. Because the petitioner again fails to establish bias, Dublin already provided testimony on the record, and Officer DeHaven sufficiently documented his reasoning, there was no due process violation.

The petitioner received written notice of the charged infraction and the facts supporting it in October 2022. Again, he does not challenge receiving this notice. The petitioner attended the disciplinary hearing, spoke in his own defense, and had the opportunity to request witness statements. Both of his requested witnesses submitted statements and both statements were read into the hearing record. The petitioner received written notice of Officer DeHaven's

decision, the evidence he relied on, and the reasons for the resulting sanctions. Accordingly, the petitioner received all requisite due process.

### a. Appearance of Fairness Doctrine

The petitioner argues that as Officer DeHaven had already demonstrated bias against him, allowing Officer DeHaven to conduct the 505 infraction hearing was both a violation of the appearance of fairness doctrine and minimum due process. We disagree.

The appearance of fairness doctrine serves to prevent " 'a biased or potentially interested judge from ruling on a case.' " Olympic Healthcare Servs. II LLC v. Dep't of Soc. & Health Servs., 175 Wn. App. 174, 184, 304 P.3d 491 (2013) (quoting In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009)). The doctrine extends to include quasi-judicial officers. City of Lake Forest Park v. Shorelines Hearings Bd., 76 Wn. App. 212, 217, 884 P.2d 614 (1994). Proceedings under a judicial or quasi-judicial officer are only valid if a " 'reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing.' " Olympic Healthcare, 175 Wn. App. at 184 (quoting Meredith, 148 Wn. App. at 903). But to show a violation of the doctrine, the plaintiff must provide specific evidence, not mere speculation. Lake Forest Park, 86 Wn. App. at 217. "Without evidence of actual or potential bias, an appearance of fairness claim cannot succeed and is without merit." State v. Post, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992).

The petitioner cannot provide any evidence of Officer DeHaven's actual or potential bias. He attempts to do so by reiterating his earlier allegation that

Officer DeHaven interfered with Sgt. Robert's testimony in the 658 infraction hearing. He fails, however, to provide any evidence beyond his own hearsay statements to support that claim. The petitioner then asserts that Officer DeHaven recused himself from that earlier proceeding, again suggesting that the recusal indicates Officer DeHaven's guilt. But no evidence in the record shows that DeHaven recused himself. Even if he had, the petitioner's argument is still conclusory. His supposition regarding Officer DeHaven's alleged recusal is not evidence sufficient to establish actual or potential bias.

Without any evidence of actual or potential bias, Officer DeHaven did not violate the appearance of fairness doctrine and there is no violation of due process based on Officer DeHaven's supposed bias.

### b. Right to Call Witnesses

The petitioner next asserts that Officer DeHaven violated his due process rights by failing to call Dublin as a witness. Because Officer DeHaven did consider Dublin's witness testimony provided in his declaration and simply chose not to recall him to provide additional testimony, no violation of the petitioner's due process right to call witnesses occurred.

"Due process requires that an [incarcerated person] facing a prison disciplinary hearing . . . be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals." Krier, 108 Wn. App. at 38. Prison officials may be required to explain why witnesses were not allowed to testify. Ponte v. Real, 471 U.S. 491, 497, 105 S. Ct. 2192, 85 L. Ed. 2d 553 (1985).

The petitioner argues that Officer DeHaven both refused to allow Dublin to testify and failed to document his refusal for doing so. However, Dublin did testify. Dublin provided a witness statement, which Officer DeHaven accepted and read into the record. His witness statement simply did not include all of the evidence that the petitioner hoped it would. Witnesses do not have a right to refine their testimony after the court has commented on it, and the petitioner does not have an absolute right to recall a witness because he believes further testimony may be helpful. And because Officer DeHaven did allow Dublin to testify by witness statement, there was no need for him to document why he did not allow him to testify further.

### c. Written Notice of Guilty Finding

Lastly, the petitioner contends that Officer DeHaven failed to adequately document his reasons for the guilty finding. Officer DeHaven provided evidence sufficient to satisfy due process.

Due process requires an incarcerated person facing disciplinary action receive a written statement detailing the evidence relied upon and the reasons for the resulting disciplinary action. Krier, 108 Wn. App. at 38. The information must be sufficient to allow the decision to be effectively reviewed, administratively or judicially. Krier, 108 Wn. App. at 45.

Although the statement is rather brief, Officer DeHaven's written statement provided enough evidence to allow for effective review, and therefore did not violate due process. In the final written order, Officer DeHaven noted that he relied on the "staff's written testimony" and "evidence presented" to reach the

finding of guilt. He documented that evidence, summarizing the petitioner's testimony and describing the video of the altercation and the photos of the aftermath. Officer DeHaven's determinations that the petitioner threw punches back at Mayr and continued to fight once both men fell to the ground are the reasons for disciplinary action. The petitioner was charged with fighting with another incarcerated individual. Evidence of him doing so is reason to impose disciplinary action. Officer DeHaven's written statement satisfies Petitioner's due process rights.

Given that the petitioner fails to establish bias, that Dublin did testify, and that DeHaven sufficiently documented his reasoning, the 505 infraction hearing satisfied all of the petitioner's due process rights.

2. "Some" Evidence Standard

The petitioner next contends that the "some" or "any" evidence standard used to evaluate prison disciplinary proceedings is unfair and should be replaced with the "preponderance of the evidence" standard. Because the "some" or "any" evidence standard is well-established law in the prison disciplinary context, we decline to do so. The petitioner then asserts that even using the "some" evidence standard, there is insufficient evidence to support a finding of guilt for the 505 infraction. We disagree.

The United States Supreme Court clearly states that "the requirements of due process are satisfied if *some* evidence supports the decision by the prison disciplinary board to revoke good time credits." Hill, 472 U.S. at 455 (emphasis added). The court specifically declined to apply a more stringent standard of

evidence, noting that "prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Hill, 472 U.S. at 456. And because the revocation of good time credits is not comparable to a criminal conviction, "the fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have *some* basis in fact." Hill, 472 U.S. at 456 (emphasis added). The Washington Supreme Court has repeatedly upheld this standard. See Krier, 108 Wn. App. at 39; Grantham, 168 Wn.2d at 216; In re Pers. Restraint of Gossett, 7 Wn. App. 2d 610, 629, 435 P.3d 314 (2019).

The petitioner fails to provide a compelling reason to overturn this settled law. In fact, the petitioner's only argument is that this standard is unfair. His reliance on non-controlling case law from other state courts does little to strengthen his argument. We decline to apply a new standard to prison disciplinary decisions.

The petitioner also asserts that, using either his proposed preponderance of the evidence standard or the established "some" evidence standard, the hearing officer had insufficient evidence to find him guilty of fighting. We disagree.

The petitioner notes that WAC 137-25-030(505) makes it a serious violation to engage in "fighting with another incarcerated individual. " He argues that because Merriam-Webster defines "fighting" as "designed, intended, or trained to fight in combat," the plain meaning of the WAC suggests that a person

15

only engages in fighting if they intended to do so. And the petitioner asserts since he was acting purely in self-defense, no such intent exists. But the petitioner relies on a definition for the wrong part of speech. The definition that the petitioner provides defines "fighting" used as an adjective. "Fighting," as used in the WAC, is the present participle of the verb. "To fight," used as a verb, is defined as "to contend physically" in battle or combat; especially to "strive to overcome . . . a person . . . by blows or weapons." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 847 (2002). The petitioner's actions satisfy this definition.

As Officer DeHaven noted both during the hearing and in his written statement, although Mayr threw the first punch, the petitioner continued the fight. The video of the altercation shows the petitioner "on top throwing punches" and the injuries to both the petitioner and Mayr were consistent with mutual combat. This is sufficient to establish that the petitioner engaged in physical combat, determined to overcome Mayr by blows. Because the "some" evidence standard requires only a reasonable connection between the evidence and the petitioner's actions, some evidence supports the guilty finding.

3. Right to Self-Defense

Finally, the petitioner asserts that incarcerated individuals have a fundamental right to defend themselves and WAC 137-25-030(505) is unconstitutional to the extent that it does not recognize that right. DOC disagrees, arguing that incarcerated individuals do not have a recognized right to self-defense and that, even if they did, DOC properly curtailed that right based on

16

legitimate penological interests. Because DOC has a legitimate interest in prohibiting fighting, the petitioner fails to establish a constitutional right to self-defense that prevents any and all resulting sanctions, and hearing officers may consider self-defense when imposing those sanctions, WAC 137-25-030(505) is not unconstitutional. Accordingly, the 505 infraction hearing is not arbitrary and capricious.

As an initial matter, we consider whether DOC has a legitimate penological interest in prohibiting fighting among incarcerated individuals. We conclude that it does.

DOC has a legitimate penological interest in both preserving internal order and discipline and the health and safety of the prison population as a whole. Procunier v. Martinez, 416 U.S. 396, 412, 94 S. Ct. 1800, 40 L. Ed.2d 224 (1974) (overruled in part by Thornburgh v. Abbot, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed.2d 459 (1989)); In re Pers. Restraint of Williams, 198 Wn.2d 342, 367, 496 P.3d 289 (2021).

Because fighting between incarcerated individuals has a strong likelihood of upending the internal order of a prison and will almost certainly result in damage to the health and safety of either the involved or other incarcerated persons, DOC has a legitimate interest in prohibiting fighting.

The main issue arises, however, in determining whether the petitioner has a constitutional right to self-defense that offset's DOC's interest in imposing consequences for fighting, therefore rendering WAC 137-25-030(505)'s blanket ban unconstitutional. We conclude that he does not.

17

The ability to act in self-defense is a constitutionally protected right under the Second Amendment. District of Columbia v. Heller, 554 U.S. 570, 599, 628, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). However, incarcerated individuals do not necessarily retain all of the same rights as ordinary citizens. In re Pers. Restraint of Dowell, 100 Wn.2d 770, 772, 674 P.2d 666 (1984); Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974). And the inquiry into whether a right extends broader protection must be context-specific. Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 115, 937 P.2d 154 (1997).

In addition, hearing officers have discretion in imposing sanctions for serious infractions like WAC 137-25-303(505). WAC 137-28-240, WAC 137-28-350. The hearing officer may consider prior documented behavior, infraction history, mental status, and overall facility and program adjustment in addition to the facts before them. WAC 137-28-350. The only limitations are that a hearing examiner may not lower the quantity or nutritional value of food, impose corporal punishment or physical restraint, impose confinement to an environment with unhealthy temperatures, or deny adequate medical treatment. WAC 137-28-370.

The petitioner provides no case law to show that either the federal or state constitutions establish the right to self-defense in prison. Because incarcerated individuals do not retain all of the same rights as non-incarcerated people, the petitioner cannot presume that the traditional right to self-defense continues to apply. This is especially true given that incarcerated people often lose other aspects of their Second Amendment rights, like the ability to bear arms, as the result of a conviction. Without a context-specific inquiry into whether the right

18

extends broader protection, the petitioner cannot establish that WAC 137-25-030(505) violates a constitutional right.

And even if the petitioner were to establish a constitutional right to self-defense in prison, he fails to demonstrate that such a right completely protects him from any and all forms of sanction. WAC 137-25-030(505) prohibits all fighting. As noted above, DOC considers fighting to be mutual physical combat. Actions taken in self-defense may still fall into that category. It is within the hearing officer's purview to determine whether an incarcerated person was actually acting in self-defense and if that is enough to limit sanctions. The assertion of self-defense alone cannot protect against all consequences.

In fact, the petitioner's own infraction hearing demonstrates this process. The petitioner repeatedly stated that he was acting in self-defense while engaged with Mayr. Officer DeHaven clearly considered that statement but noted specifically that Petitioner continued the fight and that, once the petitioner got Mayr to the ground, "[was] on top throwing punches." In finding the petitioner guilty, Officer DeHaven did not disregard the petitioner's assertion of self-defense, it just was not the cure-all that the petitioner hoped for.

Because the petitioner fails to establish a right to self-defense that wholly protects incarcerated individuals from those sanctions and the DOC has a legitimate interest in prohibiting fighting protected by those sanctions, WAC 137-25-030(505) is not unconstitutional.

19

Accordingly, the petitioner's 505 infraction hearing was neither arbitrary nor capricious in violation of minimum due process or a constitutional right to self-defense.

We deny the petitioner's personal restraint petition.

_Smith, C.J._

WE CONCUR:

_Hazelrigg, A.C.J._          _Mann, J._