## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: <br><br> JESS RICHARD SMITH, <br><br>                   Petitioner. | No. 85696-1-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

COBURN, J. — In this personal restraint petition (PRP), Jess Smith challenges two prison disciplinary infractions imposed by the Department of Corrections (DOC) for violating a confinement-to-cell sanction. Because the record before the hearing officer contains no evidence that Smith received fair notice of the effective dates of his confinement before he was subject to the infractions, we grant Smith's petition and direct DOC to vacate the findings of guilt.

FACTS

Smith is an incarcerated individual serving a sentence at Coyote Ridge Corrections Center. In April 2023, DOC sanctioned Smith for possessing a television that did not belong to him in violation of WAC 137-25-030(1) (555), an infraction that is not at issue in this PRP. Smith received a copy of the disciplinary hearing findings, which described the sanction as "10 days cell confinement, 15 days loss of yard and

gym." The document did not indicate when Smith was to serve the sanctions.

DOC has a policy that when a disciplinary hearing officer determines that an individual is guilty the "[l]oss of privileges sanctions will be documented on DOC 17-085 Sanction Notification." DOC Policy 460.000 § III(G)(1).[1] This form reminds the inmate what rule he had been found guilty of violating, the sanction that was imposed, and the specific day and time the sanction begins and ends. For those who receive cell confinement or confinement to quarters (CTQ) sanctions, it also informs them of the parameters of such confinement, which includes exceptions for such as attending work/school programs, religious services, visits, and meals. It also provides for specific times where other activities, such as showering will be permitted. The form also has a section at the bottom for the incarcerated person to sign to acknowledge receipt and understanding of the sanction, and for the DOC employee who served the Sanction Notification to sign and date. According to the form, the original is to be given to the inmate and a copy is to be placed in the inmate's file.

Such a DOC 17-085 Sanction Notification was served on Smith on May 2, which he signed acknowledging receipt. However, the Sanction Notification was not for Smith[2] but for another incarcerated person with the same surname: "Smith, S" with DOC number 724918 in unit/cell HB32. According to the notification, that person had been found guilty of violating rules "355, 661." The sanction of 10 days of confinement to quarters, from "04/22/2023" to "05/01/2023," had already passed by the time of service on Smith.

---

[1] DOC, Policy 460.000 (rev. Feb. 22, 2023) https://doc.wa.gov/information/policies/default.aspx?show=400.

[2] All references to "Smith" represent Jess Smith, the petitioner, not "Steven Smith," who also is identified as "Smith, S."

On May 5, correctional officer Nataley Guajardo found Smith watching television in the dayroom. She informed him that he was "breaking sanction of quarters confinement." According to Guajardo, Smith replied that he was not on sanction and that they got the wrong Smith. In response to Smith's denial, Guajardo checked a sanction list posted in the sergeant's office and Smith's OMNI,[3] and confirmed Smith was on CTQ from May 3 to May 12. Guajardo spoke with Smith again, and he responded that the Sanction Notification provided to him was for the wrong Smith and that if it was "for the TV, that it was dropped." Guajardo pulled in her partner, corrections officer Cesar Martinez who told Smith that "at this moment" he was violating that sanction and if Smith had any uncertainty, that he was to speak to the H Unit Sergeant.

The next day, May 6, both Guajardo and Martinez saw Smith outside his cell. In particular, Guajardo observed Smith in the H Unit B Pod air pad speaking with another inmate. Martinez told Smith that he had been breaking sanction again, just as he had the previous day. Smith replied that he had forgotten but that he was not on sanction because he had not received a Sanction Notification at all, and the one he signed was for someone else. Smith asked Martinez, "Well, do you have on record of your files?" Martinez explained that he did not "have access to the sanction notification document that he was served." According to Guajardo, Smith requested proof of his signature on his Sanction Notification. Guajardo told Smith that she and Martinez did "not have this documentation and did not serve [him] the Sanction Notification." They told Smith the completed Sanction Notifications are to be in possession of the unit sergeant.

---

[3] Offender Management Network Information (OMNI) is a software system utilized by the Department of Corrections to track information about incarcerated persons in custody.

3

Martinez requested Smith to provide the Sanction Notification that he said he did sign but that was for someone else. Smith said he did not know where it was. According to Martinez, Smith told him that when he signed the Sanction Notification he spoke to sergeant Mooney about the error and that it was all taken care of. Guajardo filed a serious infraction report on May 6 for the May 5 incident alleging Smith violated WAC 137-25-030(1) (658) (failing to comply with administrative or post-hearing sanction). Martinez filed a serious infraction report on May 7 for the May 6 incident alleging that Smith violated rule 658 and also for being in an area considered out of bounds, WAC 137-25-030(1) (709).

Smith pleaded not guilty to all the violations, and DOC later held a disciplinary hearing to address violations from both days. The hearing was conducted over two separate days[4] because the hearing officer requested specific information from another witness after the first day of the hearing.

At the first day of the hearing, the hearing officer had reports from Guajardo and Martinez. The reports describe the events as discussed above. Guajardo also explained in her report that in regards to Sanction Notifications the "[p]roper procedure is to inform incarcerated individual of sanction rule violation, sanction dates and rules, which is then signed by incarcerated individual and timestamped by staff member serving Sanction Notification."

Smith asserted that "Officer Cress" served him on May 2, 2023 the Sanction Notification for "S. Smith" which stands for Steve Smith, another incarcerated individual who lives in the same unit. Smith submitted the Sanction Notification for "Smith, S" with

---

[4] Neither party submitted a verbatim report of the proceedings for either hearing.

4

DOC number 724918 that Smith had signed for. The notification stated "Smith, S" had been found guilty of violation rules "355, 661" and that his sanction will begin on "04/22/23" and end on "05/1/23." Smith signed the bottom and included his DOC number. The employee signature appears to be "Cress" next to the hand-written date "5-2-23." The hearing also included a witness statement from Cress that stated, "As far as sanctions I did serve Smith #739951 on 05-01-2023 and witnessed him sign it." Smith's DOC number is #739951.

At the first hearing, Smith also explained that he "spoke to the sergeant on 5/16 and he said that there was a mistake on the servings. I kept trying to talk to Mooney but he said that he would talk to me later and would get me the Sanction Notification before the hearing." The hearing officer continued the hearing to May 25, 2023 to obtain a witness statement from correctional sergeant Casey Mooney.

On the witness statement form given to Mooney, he was told that Smith reported that he spoke to Mooney about not being served a Sanction Notification for himself and was not under sanction on the dates for which the infraction was written. The form also attached the "Smith, S" Sanction Notification and noted that "the dates seem to be off" and that Smith indicated that Mooney provided Smith this form. This was not accurate as Smith had indicated that Cress served this Sanction Notification. Mooney submitted the following answers to specific questions:

> Q: Was Jess Smith 739951 on an active sanction on 5/5/23 and 5/6/23?
> A: Yes he was
> Q: If he was 'on sanction,' was he served and given fair notice of the sanction? (Please attach sanction notification with signature if so)
> A: Yes he was
> Q: Do you have anything else to add?
> A: Offender Smith signed the wrong sanction but I informed him he

> is under sanction and a corrected sanction notification was given to him. He was worried if he was serving CTQ now that it would not restart when he was given the correct paperwork. I informed him that the time would not reset because he is currently serving it.

Mooney did not attach any Sanction Notification, let alone one with Smith's signature despite being asked to do so. At the May 25 hearing, Smith submitted a Sanction Notification with his name, "Smith, J.", on it. This notification identified Smith's DOC number 739951 and explained the sanction was based on him having been found guilty of violating rule "555," which is consistent with the April hearing of his underlying infraction that was the basis of his 10-day sanction. This Sanction Notification was not signed or dated by Smith or the DOC staff who served it. The space where the time of service could be noted also was blank. On page two of the form, Guajardo is identified as the reporting employee/contract staff. A signature appears next to the name but is not legible and no date appears next to the signature. The only date on the form, May 6, 2023, is next to the signature of a lieutenant identified as the infraction reviewer. It appears to be the same lieutenant name who was the infraction reviewer on the infraction review checklist for Martinez's report.[5] The hearing officer also had the "H-UNIT SANCTION LIST" that states it was completed by "SGT Mooney" but does not include any date or time the list was updated, or any date at all. The list includes Smith and "SMITH, STEVEN," identified both with having a 10-day CTQ with the exact start and end dates.

The hearing officer found Smith guilty of both 658 violations.[6] The officer reasoned:

---

[5] Martinez wrote an initial serious infraction report about the May 6 incident, and another serous infraction report about the same incident.

[6] The hearing officer found Smith not guilty for the out-of-bounds violation.

6

> I am persuaded by the staff report that Smith did sign for being on sanction and was given fair notice. It Is clear from the evidence that he signed for another Inmate Smith, but it is also clear that he Is playing both sides of the line, telling Sgt. Mooney that he has been serving the sanction and not wanting it to start over and also trying to not serve the sanction and claim ignorance. Sgt Mooney's witness statement concludes that Smith was serving the sanction for the day in question, was given corrected paperwork, and had knowledge of the active sanction.

The hearing officer made no findings as to the Sanction Notification for "Smith, Jess" that Smith submitted.  Smith was sanctioned to 10 days of cell confinement for each violation.

DISCUSSION

To obtain relief in a PRP, the petitioner must show that he is under restraint and that the restraint is unlawful.  RAP 16.4(a).  Here, it is undisputed that Smith is under restraint.  Smith contends his restraint is unlawful because DOC did not provide fair notice that he was restricted to his cell for the dates May 5 and 6 until after the fact.  We agree.

In the context of reviewing prison disciplinary proceedings, the court must determine whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding."  In re Pers. Restraint of Reismiller, 101 Wn.2d 291, 294, 678 P.2d 323 (1984).  A decision is arbitrary and capricious if it is willful and unreasoning, done "'without consideration and in disregard of facts and circumstances.'"  Reismiller, 101 Wn.2d at 296 (quoting Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)).

A prisoner enjoys more limited due process rights than a criminal defendant.  Reismiller, 101 Wn.2d at 296-97.  A prison disciplinary proceeding is not arbitrary and

capricious if the petitioner was afforded minimum due process. In re Pers. Restraint of Anderson, 112 Wn.2d 546, 549, 772 P.2d 510 (1989). Minimum due process in prison disciplinary cases is satisfied when the petitioner (1) receives notice of the alleged violation; (2) is provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receives a written statement of the evidence relied upon and the reasons for the disciplinary action. In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 396-97, 978 P.2d 1083 (1999).

Additionally, a finding of guilt by the hearing officer must be supported by "some" or "any" evidence. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985); Reismiller, 101 Wn.2d at 295-96. When considering the "some evidence" standard, courts are not required to examine the entire record, independently evaluate credibility, or weigh the evidence. Hill, 472 U.S. at 455-56. The court's role is to determine whether there is any reliable evidence in the record that could support the hearing officer's conclusion. Id.; Reismiller, 101 Wn.2d at 297. That said, "[w]here an inmate claims lack of fair notice and is nevertheless found guilty of committing a serious infraction, 'some evidence' in the record of the hearing must support a finding that the inmate did receive fair notice of the prohibited conduct, despite his protests to the contrary." In re Pers. Restraint of Krier, 108 Wn. App. 31, 33, 29 P.3d 720 (2001).

In the instant case, DOC's own policy created a procedure through the service of the Sanction Notification form. This procedure is corroborated by Guajardo's May 6 Incident Report where she explains the "[p]roper procedure is to inform incarcerated

8

individual of sanction rule violation, sanction dates and rules, which is then signed by incarcerated individual and timestamped by staff member serving Sanction Notification." We note that the issue in this appeal is not whether there is any or some evidence that DOC placed Smith on cell confinement for specific days. It is undisputed that Smith received notice that he received a 10-day cell confinement sanction at the end of his disciplinary hearing in April for the underlying infraction. The issue is whether there is any or some evidence to support the hearing officer's ruling that Smith was given fair notice. In this circumstance, that is being told the specific days he was to serve his cell confinement prior to charging him for failing to do so.

It is undisputed that Smith was served a Sanction Notification for a different inmate with sanction dates that had passed. The hearing officer found as much, but nevertheless found Smith guilty because "Sgt Mooney's witness statement concludes that Smith was serving the sanction for the day in question, was given corrected paperwork, and had knowledge of the active sanction." No where did the hearing officer find that Smith was informed of *his* effective cell confinement dates prior to May 5 or May 6. Written records are of significant importance to both DOC and inmates. The United States Supreme Court recognizes the importance of written records in the disciplinary setting:

> Written records of proceedings will . . . protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly

9

exclude certain items of evidence, but in that event the statement should indicate the fact of the omission.

Krier, 108 Wn. App. at 44-45 (quoting Wolff v. McDonnell, 418 U.S. at 565, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).  At Smith's April disciplinary hearing, he was told he would be sanctioned for 10 days of cell confinement, but he was not told when that would begin.  The hearing officer relies on Mooney's witness statement to support the finding of guilt.  But Mooney's witness statement does not provide any evidence as to *when* he "informed" Smith he was under sanction and *when* he gave Smith a corrected Sanction Notification.

Notably, Mooney answered "Yes" – a conclusory answer – to the question as to whether Smith was served and given fair notice of the sanction, but did not attach any Sanction Notification as requested.  Mooney's statement was dated May 21, 2023, well after the violation dates, yet no Sanction Notification was submitted with his witness statement.  It was Smith who submitted the Sanction Notification with his name on it at the May 25 hearing.  We further observe that the hearing officer made no findings as to this particular Sanction Notification.  Instead, the reasoning the hearing officer gave to support the guilty finding was that Mooney's statement concludes that Smith was serving the sanction for the day in question, meaning he had knowledge of the active sanction.  But again, Mooney's conversation with Smith and the serving of the correct Sanction Notification could have taken place sequentially after May 6.  There simply is no evidence from Mooney in this record that supports he notified Smith of the effective dates of his prior sanction *before* the charged violations on May 5 or May 6.[7]

_____

[7] We reject DOC's attempt to supplement the record by attaching a declaration from Mooney dated December 2023 to its response to Smith's PRP.  DOC did not file a motion seeking permission of this court to supplement the record. RAP 10.3(a)(8); RAP 9.11(a).  More

DOC also argues that Martinez and Guajardo gave Smith verbal notice. First, giving Smith notice that his confinement was active at the same time he is alleged to have violated it is not fair notice. Second, the hearing officer did not find that either Martinez or Guajardo notified Smith of the accurate time frame for his confinement sanction. Third, "the relevant question is whether there is any evidence in the record that could support *the conclusion reached by the* [hearing officer]. Hill, 472 U.S. at 455-56 (emphasis added).

As to the form, DOC argues that Smith has no right to demand that the notification form be signed by him. But this misconstrues the argument. Smith does not argue, and we do not hold, that even if the Sanction Notification was properly served, but unsigned by the inmate, it would necessarily not be considered fair notice. As supported by DOC's own policy and Guajardo's statement, a Sanction Notification signed by Smith could establish whether and when he was given notice of when his sanction took effect.

The record fails to demonstrate that there was any evidence to support that Smith was fairly notified of the dates during which he was to serve his sanction prior to the dates he was charged for violating such sanction.

---

importantly, DOC is well aware of this court's holding in Krier, 108 Wn. App. at 45, published in 2001 and cited to no less than 19 times since then in DOC disciplinary cases, which we need not emphasize through a lengthy string cite. As we stated in Krier:

> To allow the Department to cure defects in the evidence in the record with respect to an inmate's guilt of a serious infraction, in response to a personal restraint petition challenging the sufficiency of the evidence in that same record, would defeat the principles underlying the due-process requirement that an inmate subjected to a serious sanction receive a written statement of the fact finder as to the evidence relied on and the reasons for the disciplinary action.

Id. at 44.

Accordingly, we grant Smith's petition and direct DOC to vacate the findings of guilt.

_Coburn, J._

WE CONCUR:

_Birk, J._     _Hazelrigg, A.C.J._